535 A.2d 1186

**COMMONWEALTH of Pennsylvania**

v.

**Edwin GARCIA, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1987.

Filed Jan. 20, 1988.

134

Harold Diamond, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY and BECK, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Philadelphia County against appellant, Edwin Garcia. Garcia was convicted of first-degree murder and possessing an instrument of crime. We affirm.

Between 10:30 p.m. and 11:00 p.m. on the evening of March 5, 1986, Edwin Garcia rode his bicycle to the apartment of his erstwhile girlfriend, Lucy Nieves. Upon arriving at the apartment complex, Garcia was met by Luis Nieves, Ms. Nieves's brother, who indicated that his sister was out for the evening. Mr. Nieves asked Garcia to leave; however he ignored this request and ungraciously decided

to remain and watch television pending her arrival. At approximately 1:00 a.m. Ms. Nieves returned from her engagement. She asked her beau, Oliver Mangold, to wait outside while she spoke with her brother. Upon entering her apartment, Ms. Nieves was startled to find Mr. Garcia in the living room with her brother. She immediately demanded that Garcia leave, indicating that her date would be extremely indignant to find him in the apartment. Acceding to his estranged paramour's request, Garcia prepared to leave, but first went into the kitchen to retrieve a knife, allegedly for the repair of his bicycle. He then descended the stairs outside the apartment with his bicycle in tow. As appellant reached the bottom of the steps and opened the door, he immediately noticed Mangold positioned behind the door. As Garcia exited the building, Mangold commented: "Why don't you go home to your momma, little boy?" Mangold then placed his open hand in Garcia's face and pushed him backwards, causing him to fall to the ground. A fight ensued in the parking lot of the apartment complex with the two men eventually wrestling each other on top of Lucy Nieves's automobile. In the midst of the altercation, Garcia withdrew the kitchen knife from his pocket and repeatedly imbedded its blade into the victim's back and side. The stab wounds proved to be immediately fatal. Police were summoned to the scene and Garcia was ultimately arrested and detained pending trial.

Garcia was tried by Judge Juanita Kidd Stout, sitting without a jury, in the Court of Common Pleas of Philadelphia County. He was found guilty of murder in the first degree, 18 Pa.C.S. § 2502, and possession of an instrument of crime, 18 Pa.C.S. § 907. New counsel entered an appearance on Garcia's behalf and filed timely post-trial motions. The court considered and denied these motions. Thereafter, appellant was sentenced to life imprisonment for the murder charge and one concurrent term of two and one half to five years for the weapons offense. This appeal followed.

Garcia advances the following four issues for our review: (1) whether the Commonwealth proved, beyond a reasonable doubt, that his actions were not justified; (2) whether the

Commonwealth proved, beyond a reasonable doubt, that he acted with premeditation; (3) whether trial counsel was ineffective in not arguing that Garcia was guilty only of voluntary manslaughter; and (4) whether Garcia knowingly and intelligently waived his constitutional right to a jury trial.

Garcia's first two issues controvert the findings of fact and veracity of the witnesses who testified at his trial. Essentially he reiterates, from an adversarial viewpoint, the evidence proffered at trial and the conclusions that should have been drawn from that evidence. We note, however, that Garcia's brief does not set forth any specific assignment of legal error in the trial court's determination. It is well settled that it is within the province of the trial judge, sitting without a jury, to judge credibility of the witnesses and weigh their testimony. *Allegheny County v. Monzo,* 509 Pa. 26, 500, A.2d 1096 (1985). Consequently, credibility determinations are generally not subject to review. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d 1203 (1982). Only when the weight of the evidence is so contrary as to shock one's sense of justice will a verdict be overturned as against the weight of the evidence. *Commonwealth v. Jensch,* 322 Pa.Super. 304, 469 A.2d 632 (1983).

The trial court dutifully heard all the evidence presented by both parties, and rendered a determination based upon its observations. In so doing, the court properly accepted various portions of the evidence as convincing, while at the same time rejecting implausible and unconvincing testimony. The court concluded, as a matter of sound factual determination, that Garcia's resort to deadly force was unjustified, premeditated, and malicious, warranting a conviction of first-degree murder. We will not overturn the verdict as Garcia requests, by second-guessing the learned trial judge's perceptions of the witnesses' veracity and believability. Accordingly, we find Garcia's first two allegations of error to be meritless.

Garcia next contends that his trial counsel was constitutionally ineffective for relying solely on a theory of self-defense in his representation. He emphatically maintains that

trial counsel should have presented arguments in favor of voluntary manslaughter as an alternative theory to finding him guilty of first-degree murder.

■ It is well settled that when confronted with a claim of ineffective assistance of counsel, a reviewing court must first ascertain whether the issue underlying the charge of ineffectiveness is of arguable merit and, if so, whether the course chosen by counsel had some reasonable basis designed to serve the interest of his client. *Commonwealth v. McBee*, 513 Pa. 255, 520 A.2d 10 (1986); *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

In *Commonwealth v. Nauman*, 345 Pa.Super. 457, 498 A.2d 913 (1985), we stated:

> Before a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect defendant's interests. Thus, counsel's assistance is deemed constitutionally effective once we are able to conclude the particular course chosen by counsel had some reasonable basis designated to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record.

345 Pa.Super. at 462, 498 A.2d at 915 (citations omitted). In addition to showing that the issue underlying the charge of ineffectiveness is of arguable merit and that there was no reasonable basis for the ineffective performance, a defendant claiming ineffectiveness of counsel must demonstrate that he was prejudiced by the ineffectiveness. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), *aff'g* 345 Pa.Super. 324, 498 A.2d 423 (1985) (en banc); *McBee*, 513 Pa. at 262, 520 A.2d at 13. The law presumes that counsel was effective; therefore the burden of establishing ineffec-

tiveness rests squarely upon the appellant. *Commonwealth v. Ellis*, 354 Pa.Super. 11, 510 A.2d 1253 (1986).

■ Voluntary manslaughter under our Criminal Code is the intentional killing of another, without malice aforethought, but in a sudden heat of passion caused by adequate legal provocation, before sufficient time has elapsed for the "blood to cool" and reason to reassume control of the actor's conduct. *Commonwealth v. White*, 492 Pa. 489, 424 A.2d 1296 (1981); *Commonwealth v. Fisher*, 342 Pa.Super. 533, 493 A.2d 719 (1985); 18 Pa.C.S. § 2503. In order to successfully militate in favor of a voluntary manslaughter verdict, evidence must indicate that the slaying occurred as a result of passion generated by legal provocation or as the result of a mistaken belief in existence at the moment of the crime. Consequently, absence of malice is the critical determinant of culpability, and the jury must be satisfied that the death was not a consequence of the actor's hardness of heart or careless disregard for human life. *Commonwealth v. Cain*, 484 Pa. 240, 398 A.2d 1359 (1979); *Fisher, supra.*

■ Our examination of the trial record and appellate briefs in this case leads us to the inescapable conclusion that Garcia's trial counsel was effectively precluded from presenting a "heat of passion" argument in support of a voluntary manslaughter verdict. Such an argument would have contradicted Garcia's own testimony surrounding the events as they unfolded on the morning of March 6, 1986. Garcia indicated that the attack was unprovoked, and that he harbored no emotional turmoil about Mangold's presence.

It is clear to us that trial counsel competently chose a defense strategy, albeit an unsuccessful one, with the paramount goal being complete acquittal of all charges. We cannot find this to be inefficacious. Trial counsel pursued a trial strategy that painted Garcia as an innocent party, victimized by a man much stronger and older than himself. Indeed, it is well settled that a strategy aspiring to achieve an acquittal, rather than a compromise verdict of manslaughter, is considered effective assistance of counsel.

*Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979); *Commonwealth v. McGrogan*, 449 Pa. 584, 297 A.2d 456 (1972). Accordingly, we find appellant's ineffective assistance of counsel claim to be without merit.

■ Garcia's last contention surrounds the propriety of his waiver of his constitutional right to a jury trial. Specifically, he claims that since his native language is not English, he was unable to undertake a knowing and intelligent waiver of his constitutional rights. Appellant proclaims: "As a matter of pride [I] would not admit to the trial court that [I] could not fully understand what occurred during the jury-waiver colloquy." We find this claim to be untenable.

Garcia's waiver colloquy was conducted through a court interpreter. Thus, the allegation that he was unable to understand the nature of his decision because of the supposed "language barrier" is utterly devoid of logic. Additionally, we note that Garcia apparently testified at trial without the aid of an interpreter. As the Commonwealth has noted, that testimony features a fine command of the English language, including expressions in colloquial idiom. In light of the foregoing, we conclude that Garcia knowingly and intelligently waived his constitutional right to be tried before a jury.

Judgment of sentence affirmed.