666 A.2d 292

**COMMONWEALTH of Pennsylvania**

v.

**Felix Antonio ROSARIO–HERNANDEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted June 22, 1995.

Filed Sept. 20, 1995.

26

28

John Elder, Assistant Public Defender, Reading, for appellant.

Iva C. Dougherty, Assistant District Attorney, Reading, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

CAVANAUGH, Judge:

This is an appeal from the judgment of sentence of seven (7) to fifteen (15) years imprisonment, imposed following appellant being found guilty as an accomplice to the crimes of

30

voluntary manslaughter, aggravated assault (serious bodily injury), aggravated assault (deadly weapon), and recklessly endangering another person. The charges in this case arose from a shooting incident in Reading, Pennsylvania, in which appellant was the driver of the getaway car. After careful review, and for the reasons which follow, we affirm appellant's convictions, but vacate the trial court's judgment of sentence and remand for resentencing.

The first issue raised by appellant is that the court erred in failing to suppress his statement to police, where he was arrested without probable cause and his statement was the fruit of the illegal arrest. Appellant proffers three arguments that probable cause was lacking: 1) that the police information placing him at the scene was based on hearsay; 2) that the reliability of the witnesses upon which the police relied was not established; and 3) that the information provided to police only established that he was present at the scene.

■■■■ When reviewing the ruling of a suppression court, we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Patterson*, 488 Pa. 227, 412 A.2d 481 (1980); *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975).

*Commonwealth v. Cortez*, 507 Pa. 529, 532, 491 A.2d 111, 112 (1985).

■■■■ Appellant did not present evidence at the suppression hearing and does not contest the facts surrounding his arrest. His contention is that the suppression court's decision was based upon an erroneous legal conclusion. Thus, we need

only determine whether the facts support the conclusion that the arrest of appellant was supported by probable cause.

Probable cause for a warrantless arrest exists if the facts and circumstances within the the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. *Commonwealth v. Quiles*, 422 Pa.Super. 153, 166–67, 619 A.2d 291, 298 (1993). In determining whether probable cause existed for a warrantless arrest in a particular situation, a court will look not just at one or two individual factors, but will consider the "totality of the circumstances" as they appeared to the arresting officer. *Id.* The reliability of information provided to police can be verified in a number of ways, including: where the police are able to provide independent corroboration of the information, or where the information is adverse to the individual's penal interest. *In the Interest of J.H.*, 424 Pa.Super. 224, 228, 622 A.2d 351, 353 (1993).

Viewing the facts within the knowledge of the arresting officer, we conclude that he was warranted in believing that appellant had been involved in the commission of a crime. Several police officers, including the arresting officer, interviewed a number of people regarding the shooting incident. Two people, who both witnessed the shooting, told police that they saw a Hispanic male fire shots on Franklin Street and then run to a nearby vehicle (one of the witnesses described it as a big red car) driven by another Hispanic male, which then sped away. A third eyewitness told police that he saw the shooter get out of a red Cadillac and the passenger slide over into the driver's seat. The shooter walked onto Franklin Street and fired several shots at two individuals, then reentered the Cadillac which sped away.

In addition to these three eyewitnesses, several other individuals provided information to police. Nasser Abdellah, who lived with the shooter and appellant at 514 South Eleventh Street, told police that the shooter and appellant had left the house together the day of the shooting and returned together

a half hour later. He further revealed that upon returning, the shooter told him that he had shot the victim. Abdellah also told police that he agreed to take the shooter to Philadelphia, and that they left appellant at the residence.

Another individual, Carmello Heyere, told police that his car had been used in the shooting, and that he was at appellant's residence when appellant and the shooter returned after the incident. The shooter advised Heyere that he and appellant had used the red Cadillac to go to and from the shooting and that he had shot a man on Franklin Street. Heyere also told police that appellant was called "Shorty".

Finally, while the police were interviewing Heyere's girlfriend, she received an anonymous phone call. The caller stated that the driver of the shooter's car was at 514 South Eleventh Street (appellant's residence) and goes by the name of "Shorty". The caller also gave a physical description of appellant. Heyere's girlfriend relayed this information to the police.

Based upon all of the information learned by police, we conclude that the Commonwealth did more than place appellant at the scene. Viewed objectively, this information connected him with the shooter in circumstances which made it probable that he was involved with the shooter and/or had acted in concert with him. The information provided by secondary witnesses was also reliable in that it was corroborated to a large degree by eyewitnesses (red Cadillac involved in shooting; two Hispanic males were involved—one was the shooter, the other was the driver), and one of the secondary witnesses proffered information which was adverse to his penal interest (Abdellah helped shooter flee to Philadelphia). Finally, appellant has failed to offer, nor are we aware, of any authority which prohibits the use of hearsay, especially in a case, such as this one, where the information was relayed through other police officers. Of necessity, a determination of probable cause, whether by magistrate or by a police officer, will in many cases require the police to rely on information learned from others. It is for this reason that the reliability of individuals providing information is examined. We remind

appellant that the officer need only possess sufficient facts such that a person of reasonable caution would believe that a crime had been committed and that appellant was involved. In this case, the arrest of appellant was supported by an abundance of probable cause.

■ The second issue raised by appellant is that the evidence was insufficient to support his convictions as an accomplice to voluntary manslaughter, two counts of aggravated assault and recklessly endangering another person. Specifically, appellant argues that there was no evidence that he was aware of the intentions of the shooter, and that his actions were more consistent with innocence than guilt.

**■ In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt. It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The jury is free to believe all, part or none of the evidence introduced at trial. The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.' "**

*Commonwealth v. Shoup*, 423 Pa.Super. 12, 16, 620 A.2d 15, 17 (1993) (citations omitted). Both direct and circumstantial evidence must be considered in determining whether the Commonwealth has proved all of the elements of the offenses charged beyond a reasonable doubt. *Commonwealth v. French*, 396 Pa.Super. 436, 440, 578 A.2d 1292, 1294 (1990), *aff'd.*, 531 Pa. 42, 611 A.2d 175 (1992).

34

▮ As noted *supra*, appellant was found guilty as an accomplice in the shooting incident. A person may be held criminally liable as an accomplice, "if with the intent of promoting or facilitating the commission of the offense, he aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S.A. § 306(c)(1)(ii). The least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. *Commonwealth v. Calderini*, 416 Pa.Super. 258, 263, 611 A.2d 206, 208 (1992).

The evidence produced at trial established the following. A red Cadillac driven by the shooter, and in which appellant was a passenger, was sitting at a traffic light at Ninth and Franklin Streets. The two men inside were conversing. The shooter then got out of the car and appellant immediately slid over into the driver's seat and put the car in gear. The shooter walked a short distance down Franklin Street and fired several shots at two men. Meanwhile, appellant drove the Cadillac through the traffic light at Ninth and Franklin Streets. As the Cadillac proceeded through the intersection, the driver (appellant) was looking back out the window in the direction of the shooter, and the wheels of the Cadillac were scraping against the curb on the far side of the intersection. After firing several shots, and fatally wounding the victim,[1] the shooter returned to the Cadillac, got in the passenger side, and the car sped off. Viewing this evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences in its favor, we conclude that the evidence was more than sufficient to establish that appellant aided the shooter with the intent to facilitate the killing and assault of the victim.

▮ The third issue is whether the court erred in failing to charge the jury with appellant's requested points for charge, regarding culpability as an accessory after the fact.

1. We note that the shooter fired shots at two individuals who were standing together on the street. Only the victim was hit. The other individual escaped injury. The crimes of which appellant was convicted as an accomplice all related to the killing and assault of the victim and not the other individual.

**In reviewing jury instructions in order to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls. A trial court is not required to accept requested instructions verbatim. The key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations.**

*Shoup, supra,* at 22, 620 A.2d at 20. After reviewing the record in this case, we find no merit to appellant's argument. Appellant had been charged as an accomplice and not as an accessory after the fact.[2] The facts surrounding appellant's conduct, as outlined *supra,* fully support a finding of criminal culpability as an accomplice, but do not support nor warrant an instruction regarding accessory after the fact. As such, it was only required that the trial court correctly instruct the jury regarding accomplice liability. Our review of the charge convinces us that the trial court correctly instructed the jury and that its instructions were adequate to guide them in their

**2.** Criminal liability for being an accessory after the fact is imposed by 18 Pa.C.S. § 5105, which provides as follows:

**§ 5105. Hindering apprehension or prosecution.**

(a) **Offense defined.**—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

(1) harbors or conceals the other;

(2) provides or aids in providing a weapon, transportation, disguise, or other means of avoiding apprehension or effecting escape;

(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;

(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law; or

(5) volunteers false information to a law enforcement officer;

(b) **Grading.**—The offense is a felony of the third degree if the conduct which the actor knows has been charged or is liable to be charged against the person aided would constitute a felony of the first or second degree. Otherwise it is a misdemeanor of the second degree.

deliberations. *See Calderini, supra* (where defendant is charged as an accomplice, and facts support such a charge, an instruction regarding liability as an accessory after the fact is not necessary). As such, this argument lacks merit.

 Finally, appellant contends that the court erred in sentencing him for both aggravated assault and voluntary manslaughter, because aggravated assault is a lesser included offense of voluntary manslaughter.[3] Despite the fact that it would appear to be compellingly logical to conclude that a single act which results in a manslaughter must, necessarily, encompass the lesser constituent act of assault which is a part thereof, we are obliged under Pennsylvania Law to undertake a more tortuous analysis.

In *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994), *modified,* 539 Pa. 476, 653 A.2d 615 (1994), our supreme court examined the question of whether the offenses of aggravated assault and attempted murder merge at sentencing. In clarifying when criminal offenses will merge for sentencing purposes, the court held:

> [I]n all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses. "The same facts" means any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter; or multiple criminal plans, schemes, transactions or encounters.

The court went on to state that:

> Our inquiry, ..., is whether the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element which is different, in which case the sentences merge, or whether both crimes require proof of at least one

3. We again note that the crimes for which appellant was convicted as an accomplice all involved a single victim. As such, the offenses of aggravated assault and voluntary manslaughter may merge at sentencing.

element which the other does not, in which case the sentences do not merge. *Id.* at 582, 650 A.2d at 22–24. Thus, we must determine whether the elements of aggravated assault are included within the elements of voluntary manslaughter.

Aggravated assault is codified at 18 Pa.C.S.A. § 2702. This section provides, in pertinent part, as follows:

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S.A. § 2702(a)(1). Voluntary manslaughter is codified at 18 Pa.C.S.A. § 2503. This section provides, in pertinent part, as follows:

**(a) General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed.

18 Pa.C.S.A. 2503(a)(1). The requisite act for voluntary manslaughter, the killing of another individual, coincides with and includes the act which is necessary to establish aggravated assault, the infliction of serious bodily injury. *See* 18 Pa. C.S.A. § 2301; *Anderson, supra* ("It is tautologous that one cannot kill without inflicting serious bodily injury.").

A more difficult question is posed as to whether the intent necessary to establish voluntary manslaughter, a specific intent to kill, is greater than and necessarily includes the intentional, knowing or reckless infliction of serious bodily injury, the intent required for aggravated assault. The trial court concluded that the offenses do not merge for sentencing purposes. In doing so, it reasoned that malice, which is a required element of aggravated assault, is specifically excluded from the elements of voluntary manslaughter, which requires a specific intent to kill, but by reason of passion and

provocation, contains no legal malice. Thus, the question we must resolve is whether the *mens rea* for voluntary manslaughter, the specific intent to kill, but in the absence of malice, nonetheless subsumes the *mens rea* for aggravated assault, which requires malice.

It appears that our courts have never previously addressed this question. However, other cases, which have addressed merger issues, are useful for purposes of our analysis. In *Commonwealth v. Zimmerman,* 498 Pa. 112, 445 A.2d 92 (1981), our supreme court held that simple assault was subsumed within all the grades of homicide. In so concluding the court broadly stated "[i]t is clear that assault is a constituent element of all the grades of homicide and does not require proof of a fact that the various grades of homicide do not." *Id.* at 119, 445 A.2d at 96.

Contrary to the supreme court's broad assertion, a panel of this court, in *Commonwealth v. Lopez,* 426 Pa.Super. 625, 627 A.2d 1229 (1993), held that a conviction for aggravated assault did not merge with a conviction for involuntary manslaughter. The court reasoned that malice, which is a required element of aggravated assault, was not a required element of involuntary manslaughter. In reaching its conclusion, the court focused on the degree and type of recklessness required for the respective offenses, and stated:

> [A]lthough both crimes may involve a degree of recklessness, the reckless conduct involved in aggravated assault, unlike that included in the definition of involuntary manslaughter, is of such a degree that it gives rise to an inference of malice. As the element of malice is absent in involuntary manslaughter, aggravated assault under 18 Pa. C.S. § 2702(a)(1) cannot be a lesser included offense of involuntary manslaughter.

*Id.* at 629, 627 A.2d at 1231. The court did not examine the intentional or knowing infliction of serious bodily injury, and whether these mental states would be subsumed within the requisite mental state for involuntary manslaughter. Even from a cursory comparison, however, it is clear that they would not be subsumed, as an intentional or knowing *mens rea*

is greater than one which is merely reckless or grossly negligent.

In the present case, unlike *Lopez*, we are faced with determining if two offenses, both of which have specific intent elements, will merge for sentencing purposes. Although *Lopez* has undercut the supreme court's broad assertion in *Zimmerman*, its merger analysis is not dispositive in the present case. Thus, our resolution of this issue will turn on the specific elements of the offenses at issue in this case.

After reviewing the statutory definitions of both offenses, we are unable to agree with the trial court's conclusion that the these offenses do not merge. Voluntary manslaughter requires a specific intent to kill. Even though this intent is not malicious, *Commonwealth v. Pitts*, 486 Pa. 212, 404 A.2d 1305 (1979), we, nonetheless, conclude that a specific intent to kill is greater and necessarily subsumes a specific intent to do bodily harm, even where the latter intent is malicious. In comparing the intent requirement of these two offenses, it is necessary to include the focus of the intent. Having done so, it is clear that the intent to kill must include the intent to do a lesser degree (bodily harm or serious bodily harm) of damage. As such, the two offenses merge for sentencing purposes [4] and the sentence for aggravated assault and voluntary manslaughter must be vacated.[5]

4. We note that this result produces the anomaly of a first degree felony, aggravated assault, merging into the lesser offense of voluntary manslaughter, a second degree felony. This same situation, however, occurred in *Anderson, supra*, where the court held that aggravated assault, a first degree felony, merged into attempted murder, a second degree felony. Although we have previously stated, in *Commonwealth v. Lopez*, 426 Pa.Super. 625, 627 A.2d 1229 (1993) and *Commonwealth v. Anderson*, 416 Pa.Super. 203, 610 A.2d 1042 (1992), *rev'd*, 538 Pa. 574, 650 A.2d 20 (1994), that a lesser offense could not be graded higher than the offense into which it supposedly merged, our supreme court's decision in *Anderson* has effectively overruled this conclusion. Thus, our decision is consistent with the merger analysis most recently pronounced by our supreme court in *Anderson*.

5. In *Anderson, supra*, the supreme court originally vacated only the trial court's sentence for aggravated assault. However, it subsequently modified its decision and vacated appellant's entire sentence, and remanded for resentencing. We note that Justice Castille, in the

Appellant's convictions as an accomplice to the crimes of voluntary manslaughter, aggravated assault (serious bodily injury), aggravated assault (deadly weapon), and recklessly endangering another person, are affirmed. The judgment of sentence is vacated, and the case is remanded to the trial court for resentencing.

OLSZEWSKI, J. files a concurring and dissenting opinion.

OLSZEWSKI, Judge, concurring and dissenting.

We enthusiastically join the majority's disposition of appellant's first three claims, but must respectfully dissent from the majority's treatment of the final claim regarding the merger of the crimes of aggravated assault and voluntary manslaughter.

As the majority notes, our Supreme Court recently clarified the law surrounding merger. *See Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20 (1994), *modified*, 539 Pa. 476, 653 A.2d 615 (1994). In *Anderson*, the Supreme Court wrote:

> Our inquiry . . . is whether the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element which is different, in which case the sentences merge, or whether both crimes require proof of at least one element which the other does not, in which case the sentences do not merge.

*Id.* at 582, 650 A.2d at 24 (footnotes omitted). After reviewing *Anderson*, the majority concluded that the two crimes at issue here merge because all of the elements of aggravated assault are subsumed in the requirements of voluntary manslaughter. *See* majority opinion at 39. Since we find that malice is a

concurring opinion he filed with the original decision in *Anderson*, pointed out that on remand the trial court could reconsider the entire sentence because the supreme court's ruling altered the trial court's original sentencing scheme. *See Commonwealth v. Goldhammer*, 512 Pa. 587, 517 A.2d 1280 (1986). Thus, on remand, the trial court may reconsider its entire sentence of appellant, although it may not impose a sentence for both aggravated assault and voluntary manslaughter.

requisite element of aggravated assault that is not present in voluntary manslaughter, we must disagree with the majority's conclusion that these crimes merge.

Voluntary manslaughter is "the intentional killing of another, without malice aforethought, but in a sudden heat of passion caused by adequate legal provocation." *Commonwealth v. Garcia*, 370 Pa.Super. 132, 138, 535 A.2d 1186, 1189, *appeal denied*, 519 Pa. 652, 546 A.2d 57 (1988). *See also* 18 Pa.C.S.A. § 2503. While this crime does require a specific intent to kill, it is an intent devoid of malice. *E.g., Garcia*, 370 Pa.Super. at 138–39, 535 A.2d at 1189. Rather than being driven by cruelty or hardness of heart, the actor in a case of voluntary manslaughter is driven by the heat of passion arising out of legal provocation or an unreasonable belief in the need for self-defense. *Id.* This absence of malice distinguishes voluntary manslaughter from other categories of homicide, and therefore serves as a defining element of the crime. *See Commonwealth v. Smouse*, 406 Pa.Super. 369, 379, 594 A.2d 666, 671 (1991) ("It has long been clear that malice is an essential element of third-degree murder and is the distinguishing factor between murder and manslaughter."); *Garcia*, 370 Pa.Super. at 138, 535 A.2d at 1189 ("Consequently, absence of malice is the critical determinant of culpability [for voluntary manslaughter], and the jury must be satisfied that the death was not the consequence of the actor's hardness of heart or careless disregard for human life.").

An aggravated assault occurs when one "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). It is well-established that this crime requires both the specific intent to commit serious bodily injury and the existence of malice. *E.g., Commonwealth v. Lopez*, 426 Pa.Super. 625, 627–29, 627 A.2d 1229, 1230 (1993). Thus, a defendant can only be found guilty of aggravated assault if he or she acted with a "wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of

consequences and a mind regardless of social duty." *Id.* at 628, 627 A.2d at 1230 (citations omitted).

After examining and comparing the elements of these two crimes, we find that the malice requirement in aggravated assault precludes it from merging with voluntary manslaughter. The majority's statement on page 39 of its Opinion that "the intent to kill must include the intent to do a lesser degree ... of damage" ignores the element of malice. When malice is accounted for, the equation looks much different: the intent to kill out of passion does not necessarily subsume the intent to do serious bodily injury out of cruelty or hardness of heart.

Our conclusion that these two crimes do not merge is supported by this Court's decision in *Lopez.* In that case, we held that aggravated assault would not merge with involuntary manslaughter because "[m]alice is a required element of aggravated assault but not involuntary manslaughter." *Lopez,* 426 Pa.Super. at 628, 627 A.2d at 1230. The same analysis applies to voluntary manslaughter, which also lacks the element of malice.

Since our legislature has seen fit to create a manslaughter category of homicide that is legally distinguishable from murder, and has used malice to differentiate the two, we must respect the legal significance of the element of malice. Unless and until the legislature creates a lesser category of aggravated assault, which is characterized by the absence of malice, the crime of aggravated assault should not merge with the manslaughter categories of homicide.

On this issue, therefore, we agree with the trial court that these two crimes should not merge. Accordingly, we would affirm appellant's judgment of sentence in its entirety.