J-S59027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| JAMES DUKES | : | |
| Appellant | : | No. 2036 EDA 2016 |

Appeal from the PCRA Order June 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002732-2008

BEFORE:   BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 29, 2017**

James Dukes appeals, *pro se*, from the order entered in the Philadelphia County Court of Common Pleas, dated June 20, 2016, dismissing his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA").[1]  Dukes seeks relief from the aggregate judgment of sentence of 17 to 40 years' imprisonment imposed on December 9, 2009, after he was convicted of third-degree murder, firearms not to be carried without a license, and possession of an instrument of crime ("PIC").[2]  On appeal, Dukes raises numerous related

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  42 Pa.C.S. §§ 9541-9546.

[2]  18 Pa.C.S. §§ 2502(c), 6106(a)(1), and 907(a), respectively.

claims of ineffective assistance of counsel, as well as trial court error. Based on the following, we affirm.

The facts underlying Dukes' convictions were recounted by a panel of this Court in the memorandum decision that affirmed his judgment of sentence on direct appeal:

> On July 12, 2007, Kevin July ("July"), and a cohort, Kevin Brown ("Brown"), armed themselves with firearms and drove to the area of 60th and Spruce Streets in Philadelphia with a mutual friend, Ramir Harris ("Harris"). At this location, July and Brown got out of the vehicle and crossed the street. Harris remained in the vehicle talking on his cell phone. Meanwhile, [Dukes] was loitering in and around a hair salon on 60th and Spruce Streets. [Dukes] saw July and Brown walking across the street and began "screaming and snapping." [Dukes] was observed as being "hyped, little mad." When [Dukes] got closer, he said, "didn't I tell y'all niggas I didn't want to see y'all up here no more?" A heated argument ensued.
>
> Adul Allen ("Allen") approached the scene and shared a cigarette with Harris as the fight escalated. [Dukes] accused Brown of having shot at his girlfriend and him several days before, an accusation to which July replied, "he ain't got nothing to do with it." Harris heard [Dukes] say, "nigga, you reaching?"
>
> [Dukes] then backed up and was the first person to draw a gun. Almost instantaneously, Brown drew his weapon and the two exchanged shots.[1] [Dukes] missed, but Brown's shots hit [Dukes], severely wounding him, and causing him to drop his gun. As [Dukes] retreated, July pulled out a weapon and joined with Brown to fire a combined total of 13 additional shots at [Dukes] who was now unarmed, wounded, and retreating.
>
> _____
>
> [1] Conflicting evidence was presented as to whether [Dukes] or Brown fired his weapon first or whether [Dukes] actually

succeeded in firing a shot before he was wounded and disarmed.

_____

[Dukes] staggered toward Allen, again, a bystander who was fleeing the shoot-out. July and Brown's shots missed [Dukes], but one bullet hit Allen in the upper chest. [Dukes] collapsed on the sidewalk and Allen collapsed nearby. Allen died as a result of the gunshot wound which severed his aorta, pulmonary artery, lung, and exited through his back near his fourth rib. July continued to chase [Dukes] down the street firing shots until [Dukes] escaped behind a bus.

July and Brown jumped into a car driven by Harris and fled the scene. Brown stated to July, "I was trying to shoot around you. I didn't want to hit you." Brown, seated in the back of the vehicle, handed a black, semi-automatic handgun to July who was in the front seat. July stashed both his weapon and Brown's behind the glove compartment; Harris testified that both guns were semi-automatics. Harris stopped the vehicle to get out, as he was afraid; before he did, he asked July, "what the fuck were you doing?" July told him that he engaged in the shootout because his "rep was on the line."

Tyresse Warring testified at trial. Warring was one block away from 60th and Locust Streets when he heard gunfire. Upon arriving at the scene, Warring observed [Dukes] and Allen wounded on the ground. He also saw [Dukes]'s firearm, which he removed from the scene and stashed in nearby bushes. Warring stated that the gun was a semi-automatic. Later that evening, Warring went to retrieve the gun but it was gone. However, another eyewitness, Thomas Dickerson, testified that [Dukes] had pulled a black revolver, which does not eject shells, from his waistband. Dickerson also testified that he observed Warring take the revolver.

Police and paramedics responded to the scene. [Dukes] was transported to the hospital and treated for a gunshot wound to his right chest. Surgeons were unable to remove the projectile for fear of causing further bodily harm. Dr. Edwin Lieberman opined

that the cause of Allen's death was a gunshot wound to the chest and the manner of death was homicide.

Police Officer Robert Flade searched the area and recovered 21 pieces of ballistics evidence, including 14 fired cartridge casings, a bullet specimen, two bullet jackets, two bullet jacket fragments, and numerous blood stains. He photographed and documented strike marks and bullet holes on vehicles and objects, including one located behind where July and Brown had been standing during the shooting, indicating that [Dukes] fired a shot during the altercation.

Thereafter, Officer John Cannon of the Firearms Identification Unit examined the ballistics evidence recovered. He determined that nine of the fired casings were .9 millimeter Lugar cartridge casings, all fired from the same weapon. Five of the fired casings were .357 Sigma cartridge casings, all fired from the same gun. Additionally, the rifling patterns of the bullet jackets led Officer Cannon to believe that the shots had been fired in the same direction by two separate guns. He noted that it was possible that a revolver had also been fired at the scene. The officer conceded on cross-examination that he could not tell which person fired which weapon or from where the casings originally came to rest. He also conceded that there are revolvers that will fire .9 millimeter cartridges.

During a series of interviews, Harris told the police what he had witnessed on the night in question and identified [Dukes] and Brown. A warrant was obtained for [Dukes]'s arrest as well as for Brown's and July's. [Dukes] eventually contacted the police and stated he was willing to provide a statement. [Dukes] waived his rights and acknowledged the confrontation with July and Brown on the corner of 60th and Spruce Streets. [Dukes] stated that the two men "started reaching for their guns. One pulled out his gun and started shooting and hit me in the neck." [Dukes] averred that he ran and told a young boy to get the gun after he dropped it just before he collapsed. [Dukes] told the police that he had a .9 millimeter weapon. He denied ever firing his gun.

*Commonwealth v. Dukes*, 38 A.3d 925 [338 EDA 2010] (Pa. Super. 2011) (unpublished memorandum at 1-6; record citations omitted), *appeal denied*, 63 A.3d 1243 (Pa. 2012).

Beginning on May 20, 2009, Dukes, July, and Brown were jointly tried by a jury.[3] Dukes raised the defense of self-defense at trial. On June 4, 2009, the jury convicted him of third-degree murder, firearms not to be carried without a license, and PIC. On December 9, 2009, the court sentenced Dukes to a term of 17 to 40 years' imprisonment for the murder charge and a concurrent term of two-and-one-half to five years' incarceration for the PIC offense.[4] Dukes filed a post-sentence motion, which was denied on December 29, 2009. A panel of this Court affirmed his judgment of sentence on November 21, 2011, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on October 11, 2012. *See id.*

Subsequently, Dukes filed a *pro se* PCRA petition and amended petition on January 25, 2013, and April 22, 2013, respectively. Counsel was appointed, who then filed amended petitions on July 14, 2014, and November

_____

[3] The jury convicted July of third-degree murder, attempted murder, aggravated assault, PIC, and carrying a firearm without a license. Brown was convicted of aggravated assault, PIC, and carrying a firearm without a license.

[4] The court did not impose any further penalty with regard to the firearms offense.

- 5 -

16, 2015. On June 20, 2016, following an evidentiary hearing, the court denied Dukes' petition. This appeal followed.

Subsequently, the court ordered Dukes to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on July 7, 2016. Dukes filed a counseled concise statement on July 18, 2016. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 30, 2016. Subsequently, on October 27, 2016, Dukes filed a *pro se* application for relief with this Court, requesting that he be permitted to waive his right to counsel. By *per curiam* order, we remanded the matter for the PCRA court to conduct an on-the-record determination as to Dukes' request. **See** Order, 11/22/2016. Thereafter, the PCRA court conducted a **Grazier**[5] hearing on December 8, 2016, and permitted Dukes to proceed *pro se*, finding he made a knowing, intelligent, and voluntary waiver of counsel. We may now address the substantive claims.[6]

Dukes identifies the following issues in his statement of questions involved:

1. Was trial counsel ineffective for failing to request a self defense and voluntary manslaughter charge? [Unreasonable belief]

---

[5] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988).

[6] Dukes filed a *pro se* concise statement on December 15, 2016.

- 6 -

2. Was trial counsel ineffective in requesting that the voluntary manslaughter charge that the trial court had given to the jury as to [Dukes] should be withdrawn?

3. Was trial counsel ineffective in agreeing with the prosecutor and the trial court that the voluntary manslaughter charge that was given to the jury should be withdrawn and/or that it did not apply to [Dukes] and advising the jury of this?

4. Was PCRA counsel ineffective in failing to raise on PCRA review that trial counsel denied [Dukes] effective assistance, where trial counsel suffered from psychiatric disorders during trial that adversely affected his ability to effectively defend [Dukes]?

5. Was [Dukes] denied effective assistance of counsel where trial counsel suffered from psychiatric disorders during trial that adversely affected his ability to effectively defend [Dukes]?

6. Did the trial court err in removing the voluntary manslaughter [charge] in [Dukes'] case?

Dukes' Brief at 2-3.

Preliminarily, we note: "[A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." **Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2005) (some citations omitted). "[A]ny layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." **Commonwealth v. Gray,** 608 A.2d 534, 550 (Pa. Super. 1992), *quoting* **Vann v. Commonwealth Unemployment Compensation Bd. of Review**, 494 A.2d

1081, 1086 (Pa. 1985). As such, we cannot serve as Dukes' counsel and litigate his claims for him.

Based on the nature of his claims, and the PCRA court's opinion, we will analyze Dukes' first three issues together. We note they are interconnected, all alleging trial counsel was ineffective for failing to request self-defense and voluntary manslaughter charges. Dukes' Brief at 7. The PCRA court set forth the background concerning these allegations as follows:

> At the center of [Dukes'] instant appeal are the following exchanges with the court and [Dukes'] counsel at trial about self defense and voluntary manslaughter charges, as it applied to [Dukes].

> THE COURT: All right. The Court will read the criminal homicide introduction first degree, make it specific. The homicide introduction is applicable only to Kevin Brown – I'm sorry – Kevin July and [Dukes]. First degree Kevin July and [Dukes]. And I'll inform that jury of this so they understand a little bit better. As well as voluntary manslaughter applies to Defendant July and [Dukes]. And there is the justification. I didn't have anything regarding justification for Dukes; is that correct?

> [TRIAL DEFENSE COUNSEL]: I don't think there was a self defense with [Dukes].

> THE COURT: I want to make sure that applies only to July and Brown.

> (Trial Tr. 74-75, May 28, 2009).

> THE COURT: The question that the jury posed in verbatim is: 'Judge Tucker stated in the courtroom that voluntary manslaughter applies to both [Dukes] and July[.] On [Dukes'] charge sheet, which the verdict sheet, voluntary manslaughter is not an option. Which is it?' So, we – you

- 8 -

and I talked about this before in open court whether you agree that voluntary manslaughter does not apply to your client; is that correct?

[TRIAL DEFENSE COUNSEL]: That's correct.

THE COURT: So, in essence what I will do is I'll inform the jury with your permission.

[TRIAL DEFENSE COUNSEL]: Sure.

THE COURT: Simply state to them that voluntary manslaughter does not apply to your client.

[TRIAL DEFENSE COUNSEL]: That is fine. In fact, Judge, I have no objection to Your Honor sending back a handwritten statement to the jury telling them that.

(Trial Tr. 31-32, June 2, 2009).

PCRA Court Opinion, 9/30/2016, at 5.

On appeal, Dukes asserts that because he was charged with murder,

[t]rial counsel had a legal obligation and moral duty to protect [Dukes'] due process and that is the right to a fair and impartial trial and to receive the benefit of a lesser included offense, voluntary manslaughter and self-defense charge.

Dukes' Brief at 7. Moreover, he states:

The facts in this case set forth [Dukes'] voluntary statement[,] corroborated with Commonwealth witness testimony[,] did support a finding of unreasonable belief voluntary manslaughter, however, here the prosecutor sought to prove a transferred intent 303(B) killing, which requires an intent to kill or cause serious bodily injury, but can be transferred to an unintended victim. Had counsel requested and presented [Dukes'] self-defense argument for the voluntary manslaughter charge (unreasonable belief) it would negate the intent and malice and if accepted results in an acquittal.

*Id.* at 8 (citation and record citation omitted). Likewise, Dukes contends counsel was ineffective for requesting that the voluntary manslaughter charge be withdrawn. *Id.* at 11. He complains counsel did not discuss with him whether a voluntary manslaughter or self-defense charge would be given, and that he was not present when the jury asked a question during deliberations regarding the charges. *Id.* at 12-14. Lastly, Dukes claims counsel was ineffective for agreeing with the prosecutor and the trial court that the voluntary manslaughter charge should be withdrawn and that it did not apply to his case. *Id.* at 14-16.

Our review of an order denying PCRA relief is well-established: "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Mitchell***, 141 A.3d 1277, 1283–1284 (Pa. 2016) (internal punctuation and citation omitted). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." ***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted), *appeal denied*, 72 A.3d 600 (Pa. 2013). Moreover, "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court." ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011).

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." ***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012), *citing* ***Strickland v. Washington***, 466 U.S. 668, 687-691 (1984). Moreover,

> "[t]o plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111, 1127 (Pa. 2011). Where the petitioner "fails to plead or meet any elements of the above-cited test, his claim must fail." ***Commonwealth v. Burkett***, 2010 PA Super 182, 5 A.3d 1260, 1272 (Pa. Super. 2010).

***Commonwealth v. Stewart***, 84 A.3d 701, 706-707 (Pa. Super. 2013), *appeal denied*, 93 A.3d 463 (Pa. 2014).

In addressing Dukes' claims, the PCRA court found the following:

> The decision to seek a voluntary manslaughter charge falls squarely within trial strategy and counsel is granted deference to make the strategic decision of seeking a complete acquittal rather than a manslaughter verdict. Courts will not find ineffective assistance unless "in light of all the alternatives available to counsel, the strategy actually employed [i.e. the decision to seek a complete acquittal] was so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Garcia***, 535 A.2d 1186, 1188 (Pa. Super. 1988). Courts have often found the strategic choice of an attorney to not include a lesser charge in an attempt to limit the jury's options does not constitute ineffective assistance of counsel. ***See e.g. Commonwealth v. McGrogan***, 297 A.2d 456, 459 (Pa. 1972) (finding a reasonable basis for trial counsel to seek acquittal rather than voluntary manslaughter based upon the evidence presented at trial); *Commonwealth v. Ort*, 581 A.2d 230, 233 (Pa. Super. 1990) (noting that a defense

- 11 -

strategy to seek a complete acquittal would be inconsistent with [] seeking voluntary manslaughter charge); *Commonwealth v. Garcia*, 535 A.2d 1186, 1189 (Pa. Super. 1988) ("Indeed, it is well settled that a strategy aspiring to achieve an acquittal, rather than a compromise verdict of manslaughter, is considered effective assistance of counsel."); *Commonwealth v. Ulatoski*, 407 A.2d 32, 34 (Pa. Super. 1979) (holding trial counsel was not ineffective for failing to request a voluntary manslaughter charge because testimony at evidentiary hearing demonstrated trial counsel's belief that the jury would acquit his client).

Upon hearing the testimony of [Dukes'] trial counsel at the PCRA evidentiary hearing, this court found that trial counsel pursued a reasonable trial strategy of seeking a complete acquittal rather than a compromise verdict of manslaughter. As there was a reasonable basis for trial counsel's actions, [Dukes'] entire ineffective assistance of counsel claim failed. At the PCRA evidentiary hearing, trial counsel testified he sought a strategy of complete acquittal based on ballistic evidence, statements by [Dukes] introduced at trial, and eyewitness testimony. First, counsel testified that the ballistic evidence was inconclusive as to whether [Dukes] fired a gun, which supported the trial strategy that [Dukes] did not fire any shots. Counsel also recalled a statement by [Dukes] that was introduced at trial, which supported pursuing complete acquittal. At trial, the Commonwealth introduced a statement by [Dukes] about the events the night of the shooting; [Dukes] stated he did not have a chance to pull out his gun and never fired his gun. Counsel testified that "self defense was a case where it would have been inconsistent with what we were arguing so therefore, that's why I didn't ask for self defense. It would have been inconsistent with what we were saying." [Dukes'] trial counsel did not want to pursue an inconsistent defense.

Furthermore, trial counsel also testified that an eyewitness recounted [Dukes] firing his weapon first, which would have negated presenting a theory of self defense. In counsel's own words, "[Dukes] would have started it to begin with so he wouldn't have a self defense claim itself and it couldn't even be a misbelief because [Dukes] was the one that pulled the gun first." Trial counsel testified his overall strategy for the trial was "[Dukes] was a victim just as the other fellow was a victim because [Dukes] was

the one that was shot and he was the one that went in the hospital for a couple of months…."  Trial counsel did not believe that a voluntary manslaughter or self defense charge would apply or fit in with his overall defense strategy of seeking an acquittal "because there is no show (sic) that [Dukes] fired anything and if he did do anything he was the one who had pulled the firearm out first….."

Based on the testimony from the PCRA evidentiary hearing and the court's recollection of the evidence presented at trial, [Dukes'] defense counsel was reasonable in seeking a complete acquittal rather than a compromise verdict of manslaughter.  *See* **Commonwealth v. McGrogan**, 297 A.2d 456 (Pa. 1972).  As this court found counsel had a reasonable basis in effectuating his client's interest, the court also concluded that [Dukes] did not receive ineffective assistance of counsel and post-conviction relief was not warranted.  **See Commonwealth v. Garcia**, 535 A.2d 1186 (Pa. Super. 1988).

PCRA Court Opinion, 9/30/2016, 7-9 (record citations omitted).

We agree with the court's well-reasoned analysis, and our review reveals its findings and credibility determinations are supported by the record. Of importance, the court found counsel's testimony credible, and we will not disturb the court's credibility determinations. **See Spotz**, **supra**. Accordingly, Dukes has failed to meet the second prong of the ineffectiveness test, that counsel's actions lacked an objectively reasonable basis. **See Stewart**, **supra**. Therefore, we find no relief is warranted on these claims.[7]

_____

[7] We note that included in this argument, Dukes references the fact that trial counsel filed his concise statement four days late.  A review of the record reveals that while his concise statement was untimely, a panel of this Court still addressed all of his claims. **See Dukes**, 38 A.3d 925 [338 EDA 2010]

With respect to Dukes' fourth and fifth claims, which we will address together, he argues trial counsel was ineffective because counsel suffered from a psychiatric disorder during trial, which adversely affected his ability to effectively defend Dukes, and PCRA counsel was ineffective for failing to raise the argument that trial counsel was ineffective due to his psychiatric disorders. Dukes' Brief at 16-18. Dukes reiterates his earlier argument that counsel was ineffective because he failed to request voluntary manslaughter and self-defense charges at trial. *Id.* at 18. Additionally, he states he notified PCRA counsel of trial counsel's mental health and disciplinary history, but PCRA counsel responded that he did "not believe that this issue is relevant and refused to raise this issue[.] *Id.* at 16.[8]

Dukes presents a layered claim of ineffectiveness, to which we note the following:

> Layered claims of ineffectiveness are not wholly distinct from the underlying claims because proof of the underlying claim is an essential element of the derivative ineffectiveness claim. In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the [appellant] asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

---

(Pa. Super. 2011) (unpublished memorandum at 7-17). Therefore, Dukes was not prejudiced by counsel's untimely filing.

[8] The PCRA court did not address these claims as they were raised in Dukes' *pro se* concise statement, filed on December 15, 2016.

- 14 -

*Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012) (quotation marks and quotations omitted), *appeal denied*, 64 A.3d 631 (Pa. 2013).

By way of background, it appears trial counsel represented Dukes from 2008 to 2013. The 2014 news article,[9] from which Dukes learned of counsel's temporary suspension, stated counsel was suspended for two years, retroactive to February of 2013. The article indicated trial counsel suffered from attention-deficit hyperactivity disorder and a form of depression.

Dukes' claim fails for several reasons. First, it is another argument of his aforementioned claims that trial counsel was ineffective for failing to request manslaughter and self-defense charges, which we have already determined is erroneous. Second, Dukes fails to explain how counsel's disorders affected his defense of seeking a complete acquittal. Indeed, the article did not provide any basis for Dukes to conclude counsel's psychological disorders affected counsel's representation of him. *See* Reproduced Record, Newspaper Article ("Before a psychologist identified the disorders in a 2011 diagnosis, they caused [trial counsel] to forget to file pleadings, petitions, and appeal notices, as well as provide his clients with updates. None of the clients' proceedings suffered irreparable harm from [trial counsel]'s mistakes the

---

[9] We note this article was not included in the certified record, but was included in the reproduced record.

ruling states."); **see also** Disciplinary Board File No. 180 DB 2011 (Pa. 2014). Because Dukes failed to prove trial counsel was ineffective, he is not entitled to relief on his layered allegation of ineffective assistance of PCRA counsel. Accordingly, both claims fail.

Lastly, Dukes argues the trial court erred in removing the voluntary manslaughter charge from the jury charge. **See** Dukes' Brief at 19-20. We conclude this issue is waived. **See** 42 Pa.C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). We note that generally, claims of trial court error, other than those enumerated in 42 Pa.C.S. § 9543(a)(2)(i-viii), are not cognizable under the PCRA. Furthermore, Dukes could have raised this claim at trial or on direct appeal, but he failed to do so. Accordingly, we need not address Dukes' final argument further.

Based on our disposition, we affirm the order of the PCRA court denying Dukes relief.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/29/2017*