772 A.2d 283

**Thomas Dalton DIXON**

v.

**STATE of Maryland.**

**No. 93, Sept. Term 2000.**

Court of Appeals of Maryland.

May 14, 2001.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, and Richard K. Jacobsen, Asst. Public Defender, on brief), Baltimore, for petitioner.

Shannon E. Avery, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

HARRELL, Judge.

On 12 December 1997, in the Circuit Court for Prince George's County, a jury convicted Thomas Dalton Dixon, Petitioner, of attempted voluntary manslaughter, first degree assault, and the use of a handgun in the commission of a crime of violence. The trial judge sentenced Petitioner to twenty years imprisonment for first degree assault, ten years for attempted voluntary manslaughter (to be served concurrent with the sentence for first degree assault), and twenty years for the use of a handgun in the commission of a crime of violence (to be served consecutively to the sentence for first degree assault). On appeal, in an unreported opinion, the Court of Special Appeals reversed the judgments and remanded the case for a new trial. *Dixon v. State*, No. 203, Sept. Term, 1998, unreported, 123 Md.App. 797, filed 30 October 1998, *cert. denied*, 352 Md. 619, 724 A.2d 21 (1999) (*Dixon I* ).

On remand, trial was commenced anew on the same charges, but presided over by a different trial judge. At the conclusion of the evidence, the State was permitted, over Petitioner's objection, to enter a nolle prosequi[1] of the attempted voluntary manslaughter count. A jury again convicted Petitioner of first degree assault and the use of a handgun in the commission of a crime of violence. The judge sentenced Petitioner to twenty years imprisonment for the first degree assault and twenty years for the handgun violation, to be served consecutive to the sentence on the assault conviction. The Court of Special Appeals, on direct appeal, affirmed. *Dixon v. State*, 133 Md.App. 325, 755 A.2d 560 (2000) (*Dixon II* ).

---

1. Maryland Rule 4–247 addresses the State's ability to enter a nolle prosequi. Rule 4–247 states, in pertinent part:

(a) **Disposition by nolle prosequi.** The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. . . .

(b) **Effect of nolle prosequi.** When a nolle prosequi has been entered on a charge, any conditions of pretrial release on that charge are terminated, and any bail bond posted for the defendant on that charge shall be released. . . .

We granted Petitioner's petition for writ of certiorari, *Dixon v. State*, 361 Md. 433, 761 A.2d 932 (2000), to consider the following question:

Was Petitioner illegally sentenced to twenty years for first degree assault where in a prior trial he was convicted of attempted voluntary manslaughter and first degree assault and sentenced to concurrent terms of ten and twenty years, respectively, and the Court of Special Appeals, upon reversing the convictions, concluded for the trial court's guidance on remand that first degree assault should have merged into attempted voluntary manslaughter, and on retrial the State was allowed, over objection, to nol pros the attempted voluntary manslaughter charge?

## I.

The crime in this case occurred during the early morning hours on 23 May 1997. According to the evidence, the victim, Edward Johnson, and his friend, Senee Paquita Waiters, after consuming their supply of crack cocaine, went in search of more. At approximately 2:00 a.m., they drove to the intersection of Virginia Avenue and Forest Terrace in Prince George's County. Johnson had purchased drugs in this area before. Johnson pulled the car over to where two men were standing with Petitioner and asked the group if they had any drugs. Petitioner responded affirmatively and told Johnson to drive the car to the other side of the street. Johnson complied and, after exiting the car, began talking with Petitioner. An altercation ensued, and Petitioner fired five shots, striking Johnson four times in the lower back and hip, and striking a bystander, Michael Prioleau, once in the eye. All of the charges upon which Petitioner was tried in the present case related to the acts against Johnson.

### A. *Dixon I—The First Trial*

A jury, on 12 December 1997, convicted Petitioner of attempted voluntary manslaughter, first degree assault, and the use of a handgun in the commission of a crime of violence. At the same time, the jury found Petitioner not guilty of attempt-

ed first degree murder, attempted second degree murder, and reckless endangerment. At sentencing, Petitioner's attorney argued that the first degree assault conviction merged into the attempted voluntary manslaughter conviction.[2] The trial judge apparently disagreed [3] and ordered separate sentences for each of Petitioner's convictions—twenty years imprisonment for first degree assault, ten years concurrent for volun-

---

**2.** Petitioner's attorney, in arguing for merger, employed a line of reasoning similar to that employed by the Court in *Nightingale v. State*, 312 Md. 699, 542 A.2d 373 (1988), *see infra* pp. 241–50, though he did not expressly cite *Nightingale*. He argued:

> Ordinarily, Your Honor, I would suggest that first degree assault would merge into the attempted voluntary manslaughter under the required evidence test. Unfortunately for [Petitioner], however, if the Court were to apply the required evidence test under *Blockburger* and its progeny, the Court would learn and see that there are elements of each that are not present in each other, but it is also well settled that the required evidence test is not the only test that can be used in determining whether or not there are same offenses and whether the double jeopardy clause of the Constitution would apply.

Petitioner's attorney then explained that under the first degree assault statute one can be convicted of the crime in one of two ways—causing serious physical injury or committing an assault with the use of a hand gun—and that the jury was instructed on both modalities, leaving an ambiguity as to which modality the jury used to convict Petitioner. *See infra* note 36. Petitioner's attorney concluded that the judge should resolve the ambiguity in favor of Petitioner:

> The reason I suggest that it should be resolved in his favor regarding the serious physical injury is that there's another count that's in this indictment, that is use of a handgun in the commission of a felony or crime of violence, but also by resolving the distinction between the firearm and the serious physical injury, that could bring it closer to within the required evidence test for purposes of merging, and if the Court were to follow that line of thinking, we believe that the first degree assault would merge into the attempted voluntary manslaughter. . . .

**3.** At the sentencing hearing on 13 January 1998, the trial judge stated:

> As far as the attempted voluntary manslaughter, I am going to sentence you to ten years on that. I am going to let that run concurrently. So it's twenty years, as I indicated. I am not sure whether it merges or not. I do not believe it does. I am going to sentence you to twenty in the first degree assault, ten in the first degree attempted voluntary manslaughter, let them merge, and as far as the handgun in the commission of a crime, I am going to sentence you to twenty years and make that consecutive to the other two. So what you have is a total of forty years.

tary manslaughter, and twenty years for the use of a handgun in the commission of a crime of violence conviction, to be served consecutive to the assault conviction sentence.

## B. *Dixon I—The Court of Special Appeals's Opinion*

The intermediate appellate court's unreported opinion of 30 October 1998, directed vacation of the Circuit Court's judgments and remanded the case for a new trial. The Court of Special Appeals considered five questions in its opinion. With regard to the third question, the holding as to which served as the reason the intermediate appellate court vacated the trial court's judgments, the court determined that the Circuit Court failed to make a sufficient inquiry into a reported violation during trial of its sequestration order. The appellate court, however, proceeded to volunteer to address the remaining four questions presented by Petitioner "for the court's guidance on remand."

The fifth question [4] that the court addressed was whether "the trial court err[ed] by imposing separate sentences upon the convictions for first degree assault and attempted manslaughter." Petitioner argued that, under the required evidence test,[5] the first degree assault conviction merged into the attempted voluntary manslaughter conviction. On the merger issue, the intermediate appellate court responded:

---

**4.** The first, second, and fourth questions on appeal, all of which the Court of Special Appeals answered in the State's favor were, respectively, "[d]id the trial court err by answering a question from the jury in absence of appellant and his counsel"; "[d]id the trial court err by instructing the jury that imperfect self-defense does not apply to the offense of first degree assault"; and "[d]id the trial court consider impermissible criteria in sentencing."

**5.** The Court of Special Appeals postulated that under Maryland law the required evidence test states that, "if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." (Internal quotation marks omitted) (quoting *Snowden v. State*, 321 Md. 612, 617, 583 A.2d 1056 (1991)). See *infra* pp. 231–42, for a broadened discussion of the required evidence test.

First degree assault is a relatively new statutory crime which only took effect on October 1, 1996, and the question of whether it would merge into a manslaughter conviction is a matter of first impression. The first degree assault crime appears as follows:

(a) *Serious physical injury; use of a firearm.*—(1) A person may not intentionally cause or attempt to cause serious physical injury to another.

(2) A person may not commit an assault with a firearm.... [6]

Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–1. On the other hand, attempted voluntary manslaughter [7] is a common law crime which requires the specific intent to kill and a substantial step toward the perpetration of a homicide in the heat of passion in response to legally adequate provocation. *See Cox v. State,* 69 Md.App. 396 [, 518 A.2d 132] (1986), *aff'd,* 311 Md. 326 [, 534 A.2d 1333] (1988).

An examination of the first prong of the first degree assault crime makes clear that there are no elements present which cannot be found as elements of attempted voluntary manslaughter. A conviction based on the first prong of first degree assault, therefore, would merge into a convic-

---

**6.** Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–1, first degree assault, states in its entirety:

(a) *Serious physical injury; use of a firearm.*—(1) A person may not intentionally cause or attempt to cause serious physical injury to another.
(2) A person may not commit an assault with a firearm, including:
(i) A handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short barreled rifle, as those terms are defined in § 36F of this article;
(ii) An assault pistol, as defined in § 36H–1 of this article;
(iii) A pistol, revolver, or antique pistol or revolver, as those terms are defined in § 441 of this article;
(iv) An assault weapon, as defined in § 372 of this article.
(b) *Penalty.*—A person who violates this section is guilty of the felony of assault in the first degree and on conviction is subject to imprisonment for not more than 25 years.

**7.** See *infra* pp. 237–39, for further discussion of the common law definition of attempted voluntary manslaughter.

tion for voluntary manslaughter under the required evidence test. The second prong of first degree assault, however, contains at least the additional element of the use of a firearm. Thus, . . . to determine whether [Petitioner's] first degree assault conviction should merge into the voluntary manslaughter conviction, we must know which prong of the first degree assault crime was used to convict [Petitioner]. (Footnote omitted).

The Court of Special Appeals concluded, however, that it was unable to make this latter determination as the record was ambiguous. The intermediate appellate court noted that the Circuit Court instructed the jury that it could convict Petitioner of first degree assault under either modality, (a)(1) or (a)(2), of the first degree assault statute (*see supra* note 6), and "the jury returned a verdict of guilty on the first degree assault charge without indicating which alternative it used to convict" Petitioner.

The Court of Special Appeals then turned to the legislative history of Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–1, but determined that it did not shed light on whether the Legislature intended the statutory crime to be separate from attempted voluntary manslaughter. The court next considered the "rule of lenity," which the court described as "provid[ing] that any ambiguity concerning whether the legislature intended multiple punishments for the same transaction will be resolved against creating multiple offenses out of the single transaction." (Citing *White v. State,* 318 Md. 740, 744, [569 A.2d 1271, 1273] (1990)); *see infra* note 38. The intermediate appellate court explained further:

The Court of Appeals has applied the rule of lenity when one offense is statutory and the other common law. *See White,* 318 Md. at 745–47, [ 569 A.2d at 1273–72]. That is the situation which confronts us. [Petitioner's] shooting of Johnson was a single transaction from which both first degree assault, a statutory offense, and attempted manslaughter, a common law offense, resulted.

The Court of Special Appeals concluded that under *Snowden v. State*, 321 Md. 612, 583 A.2d 1056 (1991), *supra* note 5, due to the ambiguity regarding the exact basis of the jury's verdict and the lack of guidance in the legislative history, the court must give Petitioner the benefit of the doubt and merge the sentence for first degree assault "into the greater sentence of attempted voluntary manslaughter."

## C. Dixon II—The Second Trial

■ On remand, Petitioner was tried again on the charges of attempted voluntary manslaughter, first degree assault, and the use of a handgun. At the conclusion of the evidence, the State was permitted, over objection by Petitioner's attorney, to enter a nolle prosequi as to the attempted voluntary manslaughter count.[8] The jury found Petitioner guilty of first degree assault and of the use of a handgun. At the sentencing hearing on 19 May 1999, a trial judge different than the one who presided in *Dixon I* considered the import of the Court of Special Appeals's opinion in *Dixon I*. The colloquy was:

THE COURT: There's one wrinkle in this, but I think that the wrinkle can be explained away.

[PETITIONER'S ATTORNEY]: I'm sorry. What is that?

THE COURT: The wrinkle is this. Judge Rymer [the trial judge in *Dixon I* ] sentenced him to 10 years for the involuntary—

[PETITIONER'S ATTORNEY]: The attempted involuntary manslaughter.[9]

THE COURT:—manslaughter, which was the maximum. He then sentenced him to 20 years for the first degree assault. The Court of Special Appeals said that the first degree assault actually merged into the involuntary man-

8. The propriety per se of the nolle prosequi is not before us.

9. Petitioner actually was convicted of attempted voluntary manslaughter. There is no such crime as attempted involuntary manslaughter. *Sacchet v. Blan*, 353 Md. 87, 96, 724 A.2d 667, 671 (1999); *Cox v. State*, 311 Md. 326, 332, 534 A.2d 1333, 1336 (1988).

slaughter. I think that's what they said. If that is what they said, although it merges—see, he ran them concurrent.

[PETITIONER'S ATTORNEY]: That is correct.

THE COURT: Although it merges, I think it really reduces, in effect, the maximum sentence for first degree assault down to 10 years. I could be wrong. But I think it does. And if you look at it that way, then the first degree assault, instead of being 20 years, would be 10 years.

Although that might be the legal effect, and although I allowed the State to enter as nolle prosequi the involuntary manslaughter, I think the 20 years is still possible, because, see normally you can't allow the State to enter nolle prosequi on something that's going to be detrimental to the Defense in retrial. . . .

\* \* \*

And I allowed [the State] to nol pros that because it made sense to do that. So then that raises the issue, does that limit the first degree assault to 10 years, as opposed to 20 years, because the original sentence would have merged the 20–year sentence of the first degree assault into the 10 year sentence of the involuntary manslaughter, and would have resulted in a 10 year sentence. I think that's the law. It's peculiar.

\* \* \*

THE COURT: I thought about this all during the trial. And I especially thought about it when I allowed you to nol pros involuntary manslaughter, because, normally, you cannot—you had a right to nol pros it because it was not a lesser included offense.

On the other hand, I don't think you have a right to nol pros it to the detriment of the Defendant. I think the thought there is the same; that that goes through my mind. [Prosecution has not] mentioned this, but—

[PROSECUTION]: I will address it, but I'll wait till [Petitioner's attorney] finishes his allocution.

THE COURT: Well, I'm sure I'll understand what your position is going to be, and you may be 100 percent correct. But I want Annapolis to know that it has at least been considered.

Petitioner's attorney asked the trial judge, in light of the foregoing remarks, to sentence Petitioner to no more than ten years for the first degree assault conviction and to sentence him to a concurrent sentence, within the sentencing guidelines, on the use of a handgun in the commission of a felony or a crime of violence conviction. The State responded that the trial judge was not limited to the ten year sentence on the involuntary manslaughter in *Dixon I* as to the first degree assault conviction in *Dixon II* because "[g]iven that in the posture with which this trial was brought before us now, most recently, there was no—well the attempted manslaughter was not a lesser included anything. And as Your Honor has said, that's why you allowed me to nol pros that charge." The State argued that the judge should follow the intent of the trial judge in *Dixon I*, which was to sentence Petitioner to twenty years for first degree assault, notwithstanding the ten year concurrent sentence for attempted voluntary manslaughter.[10] The State further asserted that the intent of the judge in the first trial, that Petitioner serve a total of forty years—twenty years for first degree assault (the ten concurrent years for voluntary manslaughter being inconsequential to the sentencing in the second trial due to the nol pros) and twenty

---

**10.** The State asserted:

> I think clearly the intent that Judge Rymer had when he sentenced [Petitioner] back in—well, back before, was to give him a 20 year sentence. He gave him a-sentenced him to 10 years on the attempted involuntary manslaughter and a concurrent term of 20 years for the first degree assault.
>
> Clearly, what he had in mind was, for that act he wanted him to serve a 20–year sentence. And for that reason, I don't believe Your Honor is limited to the 10 years of the charges. Once that's been nol prossed, it's out of the way. I think what the Court should carry out is the clear intent that Judge Rymer had, and that is [Petitioner] serve a 20–year sentence for the charge of the first degree assault.

consecutive years for the use of a handgun in the commission of a crime of violence—should be followed in *Dixon II.*[11]

The judge responded:

I agree with [the State]. I think that's the intent of 12–702(b);[12] that you do not exceed the sentence; not that you do not exceed the sentence for any particular offense, but that the overall sentence will not be exceeded in a retrial. I really believe that that is the intent of the Court's Article, Item 702(B) [sic]. I really do. And I have thought about that very, very seriously.

The judge then sentenced Petitioner to twenty years imprisonment for the first degree assault conviction and twenty years consecutive for the conviction of use of a handgun in the commission of a felony or a crime of violence.

---

**11.** The State explained:

> With regard to the use of a handgun, he ran that consecutive 20–year term, so clearly he felt that this was a very heinous act [Petitioner] committed, and he felt that he should pay for it as long as possible. And that's what Judge Rymer did, and that's what the Court—I'm sorry—that's what the State is asking Your Honor to do as well, to carry out that intent that Judge Rymer had, and sentence the Defendant to exactly the same thing. Give him a 40–year sentence, 20 years for the first degree assault, 20 years for the use of a handgun in the commission of a felony or a crime of violence, consecutive to each other.

**12.** Maryland Code (1974, 1998 Repl.Vol.), § 12–702(b) of the Courts & Judicial Proceedings Article (CJP), which states:

> (b) *Remand for sentence or new trial; limitations on increases in sentences.*—If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:
> (1) The reasons for the increased sentence affirmatively appear;
> (2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and
> (3) The factual data upon which the increased sentence is based appears as part of the record.
> Subsections (b)(1), (2), and (3) are not applicable to the present case.

### D. Dixon II—The Court of Special Appeals's Second Opinion

Petitioner appealed again to the Court of Special Appeals. The intermediate appellate court addressed, among other issues, the question of whether, in the sentences resulting from the second trial, the twenty year sentence for first degree assault violated Maryland Code (1974, 1998 Repl.Vol.), § 12–702(b) of the Courts & Judicial Proceedings Article (CJP). Petitioner argued, employing CJP § 12–702(b), "that the merger of the first degree assault into attempted voluntary manslaughter alluded to by [the unreported Court of Special Appeals's] opinion in *Dixon I* should compel a sentencing 'cap' of ten years, the maximum penalty for attempted manslaughter, at the retrial where an attempted manslaughter count was never submitted to the jury." *Dixon,* 133 Md.App. at 336, 755 A.2d at 566. The Court of Special Appeals disagreed.

The intermediate appellate court reasoned that the sentence resulting from the second trial did not result in a greater sentence than imposed in *Dixon I* in violation of CJP § 12–702(b). *Dixon,* 133 Md.App. at 338, 755 A.2d at 567. The court began by reasoning that because the Circuit Court in the first trial actually did not sentence Petitioner to ten years for the attempted voluntary manslaughter/first degree assault conviction, regardless of whether the court should have for the purposes of CJP § 12–702(b) and the federal Due Process Clause, "it is beyond dispute that the standard against which we measure any subsequent sentence is the original sentence that actually **WAS,** not the sentence that arguably **SHOULD HAVE BEEN.**" *Dixon,* 133 Md.App. at 337, 755 A.2d at 566 (emphasis in original). Disregarding the twenty-year consecutive sentences imposed at both trials for the unlawful use of a handgun as inconsequential to the present discussion, the court concluded that because no attempted voluntary manslaughter conviction resulted from the second trial, the ten year sentence imposed for attempted voluntary manslaughter at the first trial was not a factor to be considered at the second sentencing; the trial judge at the second trial was not limited in sentencing for the first degree assault by a ten year

cap. *Id.* Thus, the court reasoned that the twenty year sentence imposed at the second trial for first degree assault was the same sentence imposed at the first trial for first degree assault; there was no increase in sentence "within the contemplation of *North Carolina v. Pearce* [, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *(see infra* pp. 223–25) ] or [CJP] § 12–702(b)" *(see supra* note 12). *Id.*

The Court of Special Appeals then discussed Petitioner's "alternative theory for a sentencing cap." [13] The court explained its interpretation of the difference between Petitioner's alternative arguments:

> Whereas the earlier subcontention, involving the risk of vindictive resentencing, can only be triggered by the sequence of 1) an original conviction and sentence, 2) an appellate reversal followed by a retrial, and 3) a reconviction and resentencing, this second subcontention is unconcerned with any trial sequence. [Petitioner's] argument would be precisely the same if there had never been an earlier trial. Even in the limited, present-tense context of a single trial, however, [Petitioner's] argument does rely on the *dicta* from our opinion reviewing the first trial.

*Dixon,* 133 Md.App. at 338, 755 A.2d at 567. The intermediate appellate court determined:

> If the first degree assault in this case should turn out to have been a lesser included offense within the greater inclusive charge of attempted manslaughter, the ten-year

---

**13.** The court explained:

> In a separate subcontention, [Petitioner] poses a completely distinct theory as to why the twenty-year sentence for first degree assault was arguably improper. He invokes *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980), *Gerald v. State,* 299 Md. 138, 472 A.2d 977 (1984), and *Johnson v. State,* 310 Md. 681, 531 A.2d 675 (1987), for the proposition that, notwithstanding the eleventh-hour [nolle prosequi], the erstwhile presence in the trial of the attempted manslaughter count, after jeopardy had attached, effectively established a ten-year sentencing "cap" that precluded any greater sentence being imposed for first-degree assault charge.

> *Dixon,* 133 Md.App. at 338, 755 A.2d at 567.

penalty "cap" should, indeed, have been applied. If, on the other hand, the first-degree assault in this case was not a lesser included offense, then there never was a penalty "cap" and the twenty-year sentence for the assault was properly imposed. What remains for us to consider, therefore, is the senior/junior relationship between those two offenses under the circumstances of this case.

*Dixon,* 133 Md.App. at 343, 755 A.2d at 570.

In determining this alternative argument, and thus focusing on the second trial rather than on the first, the court resolved, relying primarily upon *Nightingale v. State,* 312 Md. 699, 542 A.2d 373 (1988), *Vogel v. State,* 76 Md.App. 56, 543 A.2d 398 (1988), *Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977), and *State v. Frye,* 283 Md. 709, 393 A.2d 1372 (1978), that unlike the first trial, as discussed in dicta in the unreported Court of Special Appeals's opinion in *Dixon I,* there was no ambiguity in the second trial "as to the basis for the jury's verdict of guilty on the charge of first degree assault," and thus there was no need to call upon the "rule of lenity" to clarify any vagueness regarding the basis for the first degree assault conviction. Rather, "[t]he hypothetical possibility discussed in the *dicta* never came to pass." *Dixon,* 133 Md.App. at 343–53, 755 A.2d at 570–75. The court reasoned that it was

clear [in the second trial] that the variety of first-degree assault that would merge into a conviction for attempted voluntary manslaughter was **NOT REQUIRED** to sustain the first-degree assault conviction here. That conviction rested, albeit redundantly, on an independent basis. That independent rationale, moreover, had a unique element, the use of a firearm, **NOT REQUIRED** to prove attempted voluntary manslaughter.

*Dixon,* 133 Md.App. at 353, 755 A.2d at 575 (emphasis in original) (applying *Nightingale v. State,* 312 Md. 699, 542 A.2d 373 (1988)). Thus, the court concluded that first degree assault conviction in the second trial was not the lesser included offense of attempted voluntary manslaughter and

"was not, therefore, subject to any penalty 'cap.' " *Dixon,* 133 Md.App. at 354, 755 A.2d at 575.

■ We disagree with the Court of Special Appeals. We conclude that convictions for attempted voluntary manslaughter and first degree assault of the (a)(1) variety merge under the required evidence test, while the (a)(2) variety does not. At Petitioner's first trial, the jury was instructed as to both theories of first degree assault, and the record was uncertain as to which basis, (a)(1) or (a)(2), of the statute the jury relied on in rendering its conviction of first degree assault. In sentencing at the second trial, the trial judge should have been restricted in his sentence for the first degree assault conviction by the ten year sentence for attempted voluntary manslaughter imposed at the trial in *Dixon I.* The sentence of ten years for attempted voluntary manslaughter, with twenty concurrent years for first degree assault, was an illegal sentence. Because the sentence from the first trial was illegal, the trial court was bound in its sentencing in the second trial by what would have been the legal sentence of ten years, regardless of the nolle prosequi for attempted voluntary manslaughter at the second trial.

## II.

### A. *Maryland Code (1974, 1998 Repl.Vol.), § 12–702(b)*

Maryland Code (1974, 1998 Repl.Vol.), § 12–702(b) of the Courts & Judicial Proceedings Article, *supra* note 12, states, in pertinent part, that, at a new sentencing following a successful appeal, re-trial, and conviction, "the lower court may impose *any sentence authorized by law to be imposed as punishment for the offense.*" (Emphasis added). In addition, the lower court "may not impose *a sentence more severe than the sentence previously imposed for the offense* " unless three conditions are met, *see supra* note 12. (Emphasis added).

Recently, we visited the province of CJP § 12–702(b) in *Davis v. State,* 312 Md. 172, 539 A.2d 218 (1988). We explained that CJP § 12–702(b) was Maryland's legislative response to the due process holding of *North Carolina v.*

*Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Davis,* 312 Md. at 177, 539 A.2d at 220 (citing *Sweetwine v. State,* 288 Md. 199, 214, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980)). *Pearce* "created a prophylactic rule to be applied in certain cases involving increased sentences following retrial" and held "that due process requires not only that vindictiveness play[s] no part in the resentencing, but also that a defendant must be freed of apprehension of such a retaliatory motivation." [14] *Id.* The Supreme Court in *Pearce* concluded:

> [T]o assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. [15]

*Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d 656; *see Davis,* 312 Md. at 177, 539 A.2d at 220.

We have made clear, however, that "[CJP] § 12–702(b) is a statement of legislative policy that stands independent of

---

14. The Supreme Court explained:
 Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
 *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969) (footnote omitted).

15. This language is reflected in Maryland Code (1974, 1998 Repl.Vol.), CJP § 12–702(b)(1), (2), & (3). *See supra* note 12; *see also Jones v. State,* 307 Md. 449, 454 n. 3, 514 A.2d 1219, 1221 n. 3 (1986).

current Supreme Court notions of what due process may require." *Davis*, 312 Md. at 178, 539 A.2d at 221 (internal quotation marks omitted) (quoting *Jones v. State*, 307 Md. 449, 454–55, 514 A.2d 1219 (1986)). We elaborated previously in *Jones v. State*, 307 Md. 449, 514 A.2d 1219 (1986):

[T]he General Assembly did not say "We enact *Pearce* as it now stands or may hereafter be modified by the Supreme Court." It enacted a clear and specific law. That fact that "the scope and thrust of *Pearce* " have been "clarified" in [*Texas v.* ] *McCullough*, 475 U.S.[134, 142], 106 S.Ct. [976], 982, 89 L.Ed.2d [104 (1986) ] or modified in *Wasman* [*v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) ] does not change what the statute says, any more than would the statute be repealed were the Supreme Court to overrule *Pearce in toto*. Even if the Supreme Court now believes that due process does not now forbid what it seemed to prohibit in *Pearce* . . . that has no bearing on the General Assembly's statutory policy and the intent embodied in it.

*Jones*, 307 Md. at 454–55, 514 A.2d at 1222 (citing *Briggs v. State*, 289 Md. 23, 31–32, 421 A.2d 1369, 1374–75 (1980)), *see Davis*, 312 Md. at 178, 539 A.2d at 221.

Petitioner contends that his sentence in his second trial is illegal as it violates CJP § 12–702(b). He argues:

the sentence that was actually imposed for first degree assault, 20 years, was illegal because, as the Court of Special Appeals concluded in [Petitioner's] first appeal, first degree assault merged into attempted voluntary manslaughter. Thus, "the sentence previously imposed" [, pursuant to Maryland Code (1974, 1998 Repl.Vol.), § 12–702(b),] for first degree assault was 10 years, the sentence that was imposed for attempted voluntary manslaughter.

Petitioner's Br., at 11. According to Petitioner, the Circuit Court in the second trial was required to base its sentencing for first degree assault on the "lawful" sentence of ten years for attempted voluntary manslaughter that should have been imposed. The State avers though that Petitioner's logic has

taken a "wrong turn" and that Petitioner's twenty year sentence for first degree assault resulting from the second trial was not an illegal increase in a sentence following appeal because there was no net increase in his original sentence. The State argues that because it nol prossed the attempted voluntary manslaughter charge, in the second trial, and the Circuit Court judge sentenced Petitioner to two consecutive terms of twenty years for first degree assault and the use of a hand gun charges, the Circuit Court judge "imposed precisely the same sentence of [twenty] years for first-degree assault that was originally imposed." Respondent's Br., at 2–3.

We agree with Petitioner's interpretation of CJP § 12–702(b) that the statute mandates that the sentencing following the second trial be circumscribed by a lawful sentence resulting from the first trial. It is clear that, in CJP § 12–702(b), the sentence imposed on remand must be one that is "authorized by law." Again, the court "may not impose a sentence more severe than *the sentence previously imposed for the offense*" (withstanding the three conditions, *supra* note 12). Therefore, as it must be "authorized by law," the new sentence must be based on a sentence that legal when "previously imposed." Our analysis then turns to whether the initial sentence of twenty years for first degree assault, with ten concurrent years for attempted voluntary manslaughter, was legal.[16]

The Court of Special Appeals, in its reported opinion in *Dixon II,* incorrectly concluded otherwise; the court should have followed what it pejoratively described as Petitioner's "Orwellian revision of history." Instead, the intermediate appellate court concluded that CJP § 12–702(b), regarding "the sentence previously imposed for the offense," means *only* that sentence "originally imposed," without considering whether that originally imposed sentence was lawful. *Dixon,* 133 Md.App. at 337, 755 A.2d at 567. The court stated:

---

**16.** The consecutive sentence of twenty years for the use of a handgun in the commission of a crime of violence is not at issue in this case.

For purposes of both the Maryland Rule and the federal Due Process Clause, it is beyond dispute that the standard against which we measure any subsequent sentence is the original sentence that actually **WAS,** not the sentence that arguably **SHOULD HAVE BEEN.**

The "sentence previously imposed" is the sentence that first came from the mouth of the sentencing judge—right or wrong, lawful or unlawful, constitutional or unconstitutional—and not the subsequent fate of that sentence, as it may have been cut or trimmed or shaped or in any way reformed by *ex post facto* appellate analysis. When Judge Rymer pronounced his sentences on December 12, 1997, that sentencing event, was for purposes of *North Carolina v. Pearce* and Md. Rule 12–702(b) [sic], locked immutably into history. No *dicta* of ours can change what Judge Rymer did. We may alter the effect of what he did, but cannot change the fact that he did it. Neither may a leap of logic by [Petitioner]. "The moving finger writes and, having writ, moves on . . . ."

*Id.* (emphasis in original). It is incorrect, however, to reach the conclusion that the Legislature intended that CJP § 12–702(b), if the original sentence imposed was unlawful, authorized the sentencing court, on remand, to impose an unlawful sentence.[17] The Court of Special Appeals was quick in its reasoning to cite to the purpose of *Pearce* and of CJP § 12–702(b); however, it also implicitly must have imagined that the authors of *Pearce* or of CJP § 12–702(b) apparently meant

---

**17.** *See D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990) ("This Court has said repeatedly that construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided." (Citations omitted)). We elaborated in *Winston:*

It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.

*Winston,* 320 Md. at 538, 578 A.2d at 1179–80 (quoting 2A Sutherland Statutory Construction § 45.12 (4th ed.1984)).

that, although intending to avoid vindictiveness, they would permit the outer limit of a defendant's sentence on retrial and conviction to include a previous unlawful sentence.[18]

Petitioner, in his reply brief to this Court, provides a hypothetical that demonstrates and exemplifies the error of the limits identified in the Court of Special Appeals's interpretation of CJP § 12–702(b). He writes:

A defendant is convicted by a jury of involuntary manslaughter and use of a handgun in the commission of a crime of violence. The trial court sentences the defendant to three years imprisonment for involuntary manslaughter. On the use of a handgun count, the court imposes a concurrent three year term despite the fact that Art. 27, § 36B(d), mandates a sentence of not less than 5 years without parole. The defendant appeals, and the Court of Special Appeals orders a new trial. At the new trial, the defendant is again convicted of involuntary manslaughter and use of a handgun.

Accepting the State's premise that for the purposes of [CJP] § 12–702(b) "the sentence previously imposed" is the sentence that was actually imposed even if that sentence is illegal, the trial court cannot impose a sentence more severe than three years for use of a handgun. The Legislature plainly did not intend this result, which would defeat the mandate of § 36B(d). The sentence actually imposed by the trial court cannot operate as a sentencing cap under [CJP] § 12–702(b) if it is more severe than the maximum sentence authorized by law or less severe than the minimum sentence required by law, regardless of whether the illegality favors the State or the defendant.

We shall divert from the destination to which the Court of Special Appeals leads—that if "the sentence previously imposed" may be illegal, then, on remand, following a new trial,

---

**18.** Vindictive, though primarily defined as meaning "disposed to seek revenge" or "intended for or involving revenge," can also mean "intended to cause anguish or hurt." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1318 (10th ed.1993).

the court may impose the same illegal sentence. That result leads to illegal sentences ad infinitum. In essence, assuming the first sentence was for an illegal twenty years instead of a legal ten years, then Petitioner is worse off for appealing the case—exactly what the Court in *Pearce* and the Legislature in CJP § 12–702(b) attempted to avoid.

Before, however, determining the legality of the first sentence, we must address the effect that the nolle prosequi of the attempted voluntary manslaughter charge has on the present case, if any. Our preceding discussion ignores (for the sake of demonstration and interpretation of CJP § 12–702(b)) that action and assumes that the same charges existed at the first and the second trial. To deduce otherwise permits the State, assuming that in the first trial the two charges should have merged and the legal maximum sentence was ten years, to increase a sentence that would not have been permitted to be augmented under CJP § 12–702(b). On this point, Petitioner argues:

> [T]he sole reason for the increase was the nolle prosequi of the attempted voluntary manslaughter charged by the State. It would be anomalous indeed if a sentence could be increased under [CJP] § 12–702(b) because the State *dropped* the charge. An increase in sentence is clearly not permitted under [CJP] § 12–702(b) simply because the prosecutor nol[ ] prossed the attempted voluntary manslaughter charge to get it "out of the way."

Though not directly on point, in that the cases did not involve CJP § 12–702(b), we have employed a line of reasoning, similar to what Petitioner argues here, in *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980), *Gerald v. State,* 299 Md. 138, 472 A.2d 977 (1984), and *Johnson v. State,* 310 Md. 681, 531 A.2d 675 (1987) (*infra* note 24), to demonstrate why we would not permit the entry of a nolle prosequi (or an acquittal) to cause a defendant to receive a higher sentence.[19] These cases

---

**19.** At oral argument and his brief, Petitioner emphasizes that the legality of the nolle prosequi does not have to be determined, and rather, bases his argument entirely on the nolle prosequi fitting under

also demonstrate that, assuming merger is applicable and as was broached at oral argument, the nolle prosequi could not have been permitted in the first trial and thus could not be permitted in the second trial. Analogizing those cases to the present one avoids situations in which the State nol prosses one charge, a greater offense, and proceeds on the lesser included offense, which has a greater penalty than the greater offense, and thus, because of the nolle prosequi, the defendant is subject to the greater sentence of the lesser included offense. In the present case, assuming merger of the attempted voluntary manslaughter and first degree assault convictions, regardless of the nolle prosequi, the trial judge should have been bound in sentencing by the sentence for the attempted voluntary manslaughter conviction. We then do not have to consider necessarily the nolle prosequi; however, the *Simms–Gerald–Johnson* line of cases, not permitting a nolle prosequi, provides similar reasoning why we cannot permit the second sentencing in the present case to be based on an illegality in the initial sentencing.

In *Simms v. State,* 288 Md. 712, 421 A.2d 957, we decided two cases together—*Simms v. State* and *Thomas v. State.* In the latter case, the defendant was charged with, inter alia, assault with intent to rob, with a maximum sentence of ten years, and simple assault,[20] both based on the same alleged conduct. *Simms,* 288 Md. at 717, 421 A.2d at 960. At the close of evidence, but before the case went to the jury, the State nol prossed[21] the charge of assault with intent to rob.

---

the CJP § 12–702(b) violation. Though Petitioner may be correct in this contention, we believe that this line of cases expands upon our interpretation of CJP § 12–702(b) and exemplifies why we cannot permit a nolle prosequi to lead to basing a subsequent sentence on a prior illegal sentence.

**20.** Simple assault is a common law crime for which there is no statutorily-circumscribed penalty range. *See, e.g., Gerald v. State,* 299 Md. 138, 139, 472 A.2d 977, 978 (1984); *Simms v. State,* 288 Md. 712, 714, 421 A.2d 957, 958 (1980)

**21.** Under these circumstances, the nolle prosequi served as an acquittal. *See Simms,* 288 Md. at 718, 421 A.2d at 960 ("Because jeopardy

*Simms,* 288 Md. at 718, 421 A.2d at 960. The defendant was found guilty of simple assault and was *sentenced to twelve years.*[22] We determined that because "all of the elements of simple assault are present in the offense of assault with intent to rob" and both are based upon the defendant's same acts, they are "deemed the same for merger and double jeopardy purposes." *Id.* We stated further that "simple assault is a lesser included offense of assault with intent to rob" and that "if a defendant were found guilty of both, he could not receive a separate sentence for each offense. Instead, a sentence could be imposed only for the greater offense of assault with intent to rob." *Simms,* 288 Md. at 718–19, 421 A.2d at 960–61 (citations omitted). We concluded:

> To uphold the twelve year sentences [Simms's and Thomas's] under these circumstances would be to sanction an extreme anomaly in the criminal law. It would permit a defendant to be punished more severely because of an acquittal on a charge. He would have fared better if he were less successful or had pled guilty to the greater charge of assault with intent to rob....
>
> \* \* \*
>
> Accordingly, we hold that when a defendant is charged with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial, and when the defendant is convicted only of the lesser included charge, he may not receive a sentence for that conviction which exceeds the maximum sentence

---

had attached, the State's action operated as an acquittal on each of the abandoned counts." (citing *Bynum v. State,* 277 Md. 703, 705, 357 A.2d 339, *cert. denied,* 429 U.S. 899, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976))).

22. The facts in *Simms v. State* were similar. The defendant was charged with assault with intent to rob, simple assault, and attempted larceny. *Simms,* 288 Md. at 715, 421 A.2d at 959. The jury returned a verdict of "not guilty" as to the charge of assault with intent to rob and "guilty" as to the charge of simple assault. He was sentenced to twelve years for the simple assault conviction.

which could have been imposed had he been convicted of the greater charge.[23]

*Simms,* 288 Md. at 724, 421 A.2d at 963–64.

In *Gerald v. State,* 299 Md. 138, 472 A.2d 977, the defendant was charged, in part, with, armed robbery carrying a maximum sentence of twenty years, robbery carrying a maximum sentence of ten years, and simple assault. *Gerald,* 299 Md. at 139, 472 A.2d at 978. A jury found him guilty only on the assault charge, and he was sentenced to fifteen years. *Gerald,* 299 Md. at 139–40, 472 A.2d at 978. We noted that the three charges arose out of the same incident and that "[l]ike a little fish being eaten by a bigger fish which in turn is eaten by a yet bigger fish, simple assault is swallowed by robbery which then is swallowed by armed robbery." *Gerald,* 299 Md. at 140–41, 472 A.2d at 979. Likening *Gerald* to *Simms,* we concluded:

> [W]hen the State placed Gerald in jeopardy on both the armed robbery and robbery charges, it was seeking a prosecution not only on a charge carrying a maximum possible sentence of 20 years, but, in the alternative, a charge carrying a maximum possible sentence of only 10 years.... Had it believed that Gerald's conduct was so atrocious as to warrant a sentence subject only to constitutional limitations, it could have gone to trial only on the simple assault charge, *see Simms,* 288 Md. at 726–27, 421 A.2d 957, or, if it thought that justice would be served by a possible maximum sentence of 20 years, it could have proceeded on the armed robbery and assault charges. Of course, in such event, the prosecution would have to enter a nolle prosequi before jeopardy attached with respect to the

---

**23.** We elaborated:

> [W]here the State charges both assault with intent to rob and simple assault, each charge being based on the same acts, and the defendant is put in jeopardy, the State has in effect elected to prosecute for the ten year maximum penalty specified for the greater offense of assault with intent to rob. Consequently, the twelve year sentences imposed upon Simms and Thomas are invalid.

*Simms,* 288 Md. at 727, 421 A.2d at 965.

charges it did not wish to pursue. But by putting Gerald to trial on both aggravated assaults, the prosecution indicated its acquiescence to a possible maximum sentence of 10 years. Under such circumstances, it is unfair to permit the State to exact a more severe and unanticipated penalty than that which could have been imposed if the prosecution, even though not able to prove armed robbery, had been successful in proving robbery. *See Simms*, 288 Md. at 724, 421 A.2d 957. The short of it is that the "flagship crime" governing the sentence to be imposed in the case sub judice was the robbery and not the armed robbery. The maximum possible sentence that could be imposed on Gerald's conviction of assault was, therefore, 10 years, and the sentence of 15 years which was imposed was illegal.

*Gerald*, 299 Md. at 145–46, 472 A.2d at 981. Thus, we determined that the ten year maximum sentence for robbery provided the maximum that could be imposed on the simple assault conviction.[24]

### B. *Dixon I—Legality of Initial Sentences*

#### 1. *Required Evidence Test*

■ To determine whether, in the second trial (*Dixon II*), the trial judge, in sentencing Petitioner on the first degree assault conviction, was limited to the ten year sentence imposed in *Dixon I* for the attempted voluntary manslaughter according to CJP § 12–702(b), we must decipher whether attempted voluntary manslaughter merges with first degree assault, and if so under what reasoning.[25]

---

**24.** In *Johnson v. State*, 310 Md. 681, 531 A.2d 675 (1987), the defendant, inter alia, was charged with assault with intent to maim, disfigure or disable—the greater offense with a ten year sentence maximum—and with simple assault—the lesser included offense. *Johnson*, 310 Md. at 683, 531 A.2d at 676. The State nol prossed the greater offense, and the defendant was convicted of simple assault and sentenced to twenty years. *Id.* We determined, employing *Simms* and *Gerald*, that the sentence was illegal and that the maximum sentence for simple assault was ten years. *Johnson*, 310 Md. at 684, 531 A.2d at 676.

**25.** The question of whether we had the power to consider and to decide the merger issue/legality of the *Dixon I* sentence in this appeal was

The doctrine of merging of offenses, as applicable in the present case, stems in part from the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution, applicable to state court proceedings via the Fourteenth Amendment. *See Nightingale v. State,* 312 Md. 699, 702, 542 A.2d 373, 374 (1988) (citing *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707, 711 (1969)); *Newton v. State,* 280 Md. 260, 262–63, 373 A.2d 262, 263 (1977). The Double Jeopardy Clause states that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." "The Fifth Amendment guarantee against double jeopardy prohibits both successive prosecutions for the same offense as well as multiple punishment for the offense." [26] *Newton,* 280 Md. at 263, 373 A.2d at 264 (citing *United States v. Wilson,* 420 U.S. 332, 342–43, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); *Pearce,* 395 U.S. at 717, 89 S.Ct. at 2076, 23 L.Ed.2d 656); *see Nightingale,* 312 Md. at 702–03, 542 A.2d at 374 (citing *Newton,* 280 Md. at 263–65, 373 A.2d at 264–65).

■ Under federal double jeopardy principles and Maryland merger law, the principal test for determining the identity of offenses is the required evidence test.[27] *Nightingale,* 312

---

broached during oral argument. We have determined that the legality of a sentence can be decided at "anytime." *See State v. Kanaras,* 357 Md. 170, 177–84, 742 A.2d 508, 512–16 (1999); *State v. Griffiths,* 338 Md. 485, 496–97, 659 A.2d 876, 882 (1995); *Walczak v. State,* 302 Md. 422, 426–27, 488 A.2d 949, 950 (1985); *see also Wiggins v. State,* 352 Md. 580, 616, 724 A.2d 1, 19 (1999) (Eldridge, J. dissenting) ("An issue concerning the legality of the sentence imposed is not 'finally' litigated when decided on direct appeal because, under Maryland law, a 'court may correct an illegal sentence at any time.' " (quoting Maryland Rule 4–345(a))). As we may consider the issue here, we are not, as the State would have us, bound by the Court of Special Appeals's discussion of merger in its unreported opinion *Dixon I.*

26. Maryland common law regarding double jeopardy states that "a defendant cannot be 'put in jeopardy again for the same offense—in jeopardy of being convicted of a crime for which he had been acquitted; in jeopardy of being twice convicted and punished for the same crime.' " *Griffiths,* 338 Md. at 489, 659 A.2d at 879 (quoting *Gianiny v. State,* 320 Md. 337, 347, 577 A.2d 795 (1990)).

27. In *Newton v. State,* 280 Md. 260, 266, 373 A.2d 262, 265 (1977), we explained:

Md. at 703, 542 A.2d at 374 (quoting *Newton,* 280 Md. at 268, 373 A.2d at 266); *see Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Williams v. State,* 323 Md. 312, 316–17, 593 A.2d 671, 673 (1991); *State v. Frye,* 283 Md. 709, 393 A.2d 1372 (1978); *Thomas v. State,* 277 Md. 257, 353 A.2d 240 (1976). In *Nightingale,* we described the required evidence test as the following:

> If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

*Nightingale,* 312 Md. at 703, 542 A.2d at 374–75 (quoting *Newton,* 280 Md. at 268, 373 A.2d at 266); *see Frye,* 283 Md. at 714, 393 A.2d at 1375–75; *Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056, 1058–59 (1991). Additionally, as we have noted, "[t]he required evidence test, or 'same evidence test,'[28] or 'elements test' as it is sometimes called, applies to both common law offenses and statutory offenses." *Williams,* 323 Md. at 317, 593 A.2d at 673; *Ferrell,* 313 Md. at 297–98, 545 A.2d at 656.

---

> [T]he test employed by the Supreme Court in determining whether two offenses are deemed the same for double jeopardy purposes is the required evidence test as formulated in *Morey v. Commonwealth,* 108 Mass. 433 (1871), and adopted by the Court in *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911).
>
> The U.S. Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) explained the required evidence test as the following:
>
> > The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

**28.** The test in Maryland has also taken on the name "the same evidence test," as well as the "required evidence test," because "[t]he Maryland cases have ... consistently focused upon the evidence required to convict to determine whether the two offenses are the same for double jeopardy purposes." *Thomas v. State,* 277 Md. 257, 266, 353 A.2d 240, 246 (1976)

### 2. *Application of the Required Evidence Test*

We have not before determined whether attempted voluntary manslaughter merges with first degree assault so that first degree assault is the lesser included offense of the greater offense of attempted voluntary manslaughter. We shall examine first the elements of each offense. It is important to note at the outset of this analysis that "[w]here there is a merger of a lesser included offense into a greater offense, we are not concerned with penalties—the lesser included offense generally merges into and is *subsumed* by the greater offense regardless of penalties." *Spitzinger v. State*, 340 Md. 114, 125, 665 A.2d 685, 690 (1995) (citing *Simms*, 288 Md. 712, 421 A.2d 957).

■ Attempted voluntary manslaughter is a common law crime, which occurs

> when an individual, engaged in an altercation, suddenly attempts to perpetrate a homicide caused by heat of passion in response to legally adequate provocation, and where the attempt results in something less than the actual wrongful killing, that person may be convicted of attempted voluntary manslaughter under the common law of Maryland.

*Cox v. State*, 311 Md. 326, 334, 534 A.2d 1333, 1337 (1988). Broken into its component parts, voluntary manslaughter is "an *intentional* homicide, done in a sudden heat of passion, caused by adequate provocation, before there has been a reasonable opportunity for the passion to cool." *Cox*, 311 Md. at 331, 534 A.2d at 1335 (citations omitted); *see Selby v. State*, 361 Md. 319, 332, 761 A.2d 335, 342 (2000) (citations omitted). Criminal attempt "consists of a specific intent to commit the offense coupled with some overt act in furtherance of the intent which goes beyond mere preparation." *Bruce v. State*, 317 Md. 642, 646, 566 A.2d 103, 104–05 (1989) (citing *Cox*, 311 Md. at 330, 534 A.2d 1333). Therefore, attempted voluntary manslaughter requires an attempted homicide in the heat of passion in response to a legally adequate provocation.

As noted *supra* note 6 and accompanying text, first degree assault is a statutory offense and states in pertinent part:

(a) *Serious physical injury; use of a firearm.*—(1) A person may not intentionally cause or attempt to cause serious physical injury to another.

(2) A person may not commit an assault with a firearm.

Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–1. According to the statute, a person can be convicted of first degree assault for either intentionally "caus[ing] or attempt[ing] to cause serious physical injury to another" [29] *or* "commit[ting] an assault with a firearm."

Attempted voluntary manslaughter clearly has a different required mens rea—an intent to kill—than first degree assault, which requires the specific intent to cause, or attempt to cause, serious physical injury. Upon examination of the first modality, (a)(1), of the first degree assault statute, however, it is clear that (a)(1) is *subsumed* by attempted voluntary manslaughter. Attempted voluntary manslaughter requires a specific intent to commit a homicide, which embodies an intention to cause or attempt to cause serious physical injury as required by (a)(1).

We set out a useful example in *Bruce v. State*, 317 Md. 642, 647–48, 566 A.2d 103, 105 (1989), that aids our present analysis:

Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, C, and D have each taken the life of another, A acting with the intent to kill, B with the intent to do serious bodily injury, C with reckless disregard of human life, and D in the

---

**29.** Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 12(c) defines serious physical injury as:

(c) *Serious Physical Injury.*—"Serious physical injury" means physical injury which:

(1) Creates a substantial risk of death;

(2) Causes serious permanent or serious protracted disfigurement;

(3) Causes serious permanent or serious protracted loss of the function of any bodily member or organ; or

(4) Causes serious permanent or serious protracted impairment of the function of any bodily member or organ.

course of a dangerous felony, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to so serious bodily harm, that he acted in reckless disregard for human life, or that he was committing a dangerous felony. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (i.e., the death of another). (Quoting LeFave & Scott, *Criminal Law*, § 6.2, at 500 (2nd ed.1986)).

Thus, nothing less then an intent to kill will suffice for attempted voluntary manslaughter. The intent to kill envelops the intent to do serious physical injury. Therefore, there is nothing required by modality (a)(1) of the first degree assault statute that is not also required by attempted voluntary manslaughter; the evidence required to show an attempt to kill would demonstrate causing, or attempting to cause, a serious physical injury. *Cf. Newton*, 280 Md. at 269, 373 A.2d at 267 (determining that felony murder and the underlying felony merged because "[t]he evidence required to secure a first degree murder conviction is, absent the proof of death, the same evidence required to establish the underlying felony"); *Thomas*, 277 Md. at 270, 353 A.2d at 248 (concluding that "[u]nder the *Blockburger* required evidence test, the same evidence necessary to convict on ... [a Maryland Code (1957, 1970 Repl. Vol, 1975 Cum.Supp.), Art. 66½, § 4–102, driving a motor vehicle without the consent of the owner and with the intent temporarily to deprive the owner of possession,] offense would always be sufficient to establish a [Maryland Code (1957, 1976 Repl.Vol.), Art. 27, § 349, taking of a motor vehicle without the consent of the owner and without the intent to appropriate or convert the vehicle,] offense").

 It is also apparent that the second modality of the first degree assault statute, (a)(2), requires proof of an element not required by attempted voluntary manslaughter be-

cause (a)(2) prohibits assault with a firearm and attempted voluntary manslaughter does not have such a requisite.[30] As the Court of Special Appeals aptly stated: "Manslaughter, for its part, may be attempted by modalities or with instrumentalities other than a firearm, so there is no requirement that a firearm be used." *Dixon*, 133 Md.App. at 345, 755 A.2d at 571. Therefore, modality (a)(1) of the first degree assault statute is a lesser included offense of the greater offense of attempted voluntary manslaughter, while (a)(2) is not a lesser included offense.[31]

At least one other jurisdiction has reached a similar conclusion involving a comparable first degree assault statute and the required evidence test.[32] The Superior Court of Pennsyl-

---

**30.** *Cf. Walker v. Loggins*, 608 F.2d 731, 733 (9th Cir.1979) ("Here neither murder nor manslaughter need be committed with a deadly weapon, as is required in the assault charge. . . . Under Federal law Walker constitutionally could have been convicted and sentenced for both offenses.").

**31.** In *Nightingale*, 312 Md. at 707, 542 A.2d at 376–77 we explained:
If when we look at the applicable alternative elements, a less offense in effect becomes one of the elements of another offense, the *Blockburger* [required evidence] test is met. It is met because, by virtue of that fact all the elements of the lesser offense must be established to prove the other; only the other offense has any additional elements.

**32.** Additionally, the Supreme Court of Tennessee determined that aggravated assault merges with attempted voluntary manslaughter. *Tennessee v. Denton*, 938 S.W.2d 373 (1996). The court concluded that the two offenses did not merge under the *Blockburger* test, yet concluded the offenses merged employing reasoning similar to our "same" evidence test. The Tennessee court stated:
Aggravated assault requires proof that [defendant] caused bodily injury; whereas, attempted voluntary manslaughter does not. Attempted voluntary manslaughter requires proof that [defendant] intended to kill his victim; whereas aggravated assault does not. Therefore, application of the *Blockburger* test indicates that the legislature intended to allow separate punishment for each of these offenses. As noted earlier, however, our analysis does not end here. *Douglas*, 938 S.W.2d at 382.
The difference between Tennessee's and Maryland's first degree assault statutes is that Maryland's does not require proof of causing bodily injury because it requires only an attempt to cause serious physical injury. Therefore, we do not confront the same problem with applying the *Blockburger* test that the Tennessee court did.

vania determined that voluntary manslaughter and first de-
gree assault merge because first degree assault is the lesser
included offense of voluntary manslaughter. *Pennsylvania v.
Rosario–Hernandez*, 446 Pa.Super. 24, 666 A.2d 292, 298
(1995). Under Pennsylvania law, voluntary manslaughter is
defined as "a person who kills an individual without lawful
justification commits voluntary manslaughter if at the time of
the killing he is acting under a sudden and intense passion
resulting from serious provocation by . . . the person killed."
*Id.* (internal quotation marks omitted) (quoting 18 PA. CONS.
STAT. ANN. § 2503(a)(1)). First degree assault, a multi-pur-
pose criminal statute, is defined as (1) attempting to cause
serious bodily injury to another *or* (2) causing "such injury
intentionally, knowingly or recklessly under circumstances
manifesting extreme indifference to the value of human life."
*Id* (internal quotation marks omitted) (quoting 18 PA. CONS.
STAT. ANN. § 2702(a)(1)). Maryland's requirement of serious
physical injury is similar to Pennsylvania's requirement of
serious bodily injury in its first modality. Pennsylvania's
statute in its second modality has a requirement of malice,
which the Maryland statute does not. The Pennsylvania
court, using the required evidence test, reasoned that "[t]he
requisite act for voluntary manslaughter, the killing of another
individual, coincides with and includes the act which is neces-
sary to establish aggravated assault, the infliction of serious
bodily injury." *Id.* (citations omitted). The court concluded:

> After reviewing the statutory definitions of both offenses,
> we are unable to agree with the trial court's conclusion that
> these offenses do not merge. Voluntary manslaughter re-

---

The Tennessee court then stated that "[b]ecause the evidence in this
case consisted of a single attack by [defendant] on the victim, the State
necessarily relied on the *same evidence* to establish both the aggravated
assault and the attempted voluntary manslaughter." *Id.* (emphasis
added). The court concluded that, as such, the "offenses are the 'same'
for double jeopardy purposes." *Id.* This reasoning is similar to our
own, despite our determination that the offenses merge under the
required evidence test. We determined that the evidence required to
show an attempt to kill is the same evidence that is employed to
demonstrate a causing, or attempting to cause, a serious physical
injury.

quires a specific intent to kill. Even though this intent is not malicious, *Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979), we, nonetheless, conclude that a specific intent to kill is greater and necessarily subsumes a specific intent to do bodily harm, even where the latter intent is malicious. In comparing the intent requirement of these two offenses, it is necessary to include the focus of the intent. Having done so, it is clear that the intent to kill must include the intent to do a lesser degree (bodily harm or serious bodily harm) or damage. As such, the two offenses merge for sentencing purposes and the sentence for aggravated assault and voluntary manslaughter must be vacated.

*Rosario–Hernandez,* 666 A.2d at 299–300 (footnotes omitted).

### 3. *Merger and Multi Purpose Criminal Statutes*

To determine whether, in the present case, attempted voluntary manslaughter merges with first degree assault, we must discern, if possible, under which modality of the first degree assault statute the jury convicted Petitioner. The first degree assault statute is a multi-purpose criminal statute. *See Nightingale,* 312 Md. at 705, 542 A.2d at 375. When confronted with such a statute in determining merger issues, we "refine [the multi-purpose criminal statute] by looking at the alternative elements relevant to the case at hand." *Id.; see State v. Ferrell,* 313 Md. 291, 298, 545 A.2d 653, 656 (1988) ("[W]hen a common law offense or a criminal statute is multi-purpose, embracing different matters in the disjunctive, a court in applying the required evidence test must examine 'the alternative elements relevant to the case at hand.'" (citations omitted)). The court, when presented with a multi-purpose criminal statute

must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply. It must, in other words, treat a multi-purpose statute in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each

alternative and should therefore be treated for double jeopardy purposes as separate statutes would.

*Nightingale,* 312 Md. at 706–07, 542 A.2d at 376 (quoting *Pandelli v. United States,* 635 F.2d 533, 537 (6th cir.1980)).

■ The record is not clear on which modality of the first degree assault statute the jury based its verdict.[33] In *Nightingale,* in determining upon which modality of a child abuse statute, which covered physical injury *or* sexual abuse, a jury grounded its conviction for purposes of deciphering whether there was merger with a sexual abuse statute,[34] we examined the jury instructions and remarks made by the prosecutor to the jury regarding the there relevant crimes of sexual abuse and child abuse.[35] *Nightingale,* 312 Md. at 707–08, 542 A.2d

---

33. We have recommended, and continue to recommend, that trial judges use a special verdict to avoid this type of ambiguity. *Cf. Bhagwat v. State,* 338 Md. 263, 283, 658 A.2d 244, 253 (1995) (noting that a special verdict would have avoided the confusion as to which basis the jury found the defendant guilty).

34. The statutes in question were child abuse (Art. 27, § 35A), and second degree (Art. 27, § 464A (a)(3)), third degree (Art. 27, § 464B (a)(3)), and fourth degree (Art. 27, § 464C (a)(1)) sexual offenses. *Nightingale,* 312 Md. at 700–01, 703–04, 542 A.2d at 373, 375. In *Nightingale,* we explained that Art. 27, § 35A, child abuse, requires broadly "(1) and individual under the age of 18(2) sustain physical injury or sexual abuse (3) at the hands of a parent or someone responsible for care, custody, or supervision of the victim." *Nightingale,* 312 Md. at 703, 542 A.2d at 373. The question ultimately became whether, in light of the general verdict and the numerous incidents under scrutiny, all of the child abuse convictions were based on sexual abuse amounting to that required by the sexual abuse statutes. *Nightingale,* 312 Md. at 708, 542 A.2d at 377.

35. Specifically, we examined the following from the two cases discussed in *Nightingale:*

At both trials, the judge instructed on the elements of all offenses submitted to the jury. The Nightingale instructions, unlike those in Myers's case[ (the companion case) ], included a direction to consider each charged offense separately. The Nightingale jury also was told that sexual child abuse "means any act or acts involving molestation or exploitation, including, but not limited to ... sexual offense in any degree...." The prosecutor repeated that language during closing argument and later during his remarks pointed out that some of the fondling testified to by the daughter "would be sexual contact which would fall under the definition of sexual abuse." Moreover, the

at 376–77. If the jury based its convictions of sexual abuse solely upon evidence of a sexual offense, then the sexual offense, for the purposes of merger, would have been a lesser included offense of the child abuse offense. We concluded:

> Under these circumstances, we believe that each jury [of the two companion cases] could have found the defendant before it guilty of child abuse based solely on evidence of a sexual offense in some degree. If that were done, then the sexual offense became in effect, a lesser included offense of sexual child abuse, and under the authorities we have cited, the offenses are the same for double jeopardy purposes.... [A] jury could have reached various decisions as to child abuse and sexual offenses, all of which were reflected in general verdicts of guilty.
>
> *The problem, then is that we cannot tell whether these general verdicts of guilty were based on the use of sexual offenses as lesser included offenses (or elements) of child abuse, or whether the child abuse verdicts were based on other reasons* (e.g., some sort of sexual molestation which the juries thought did not arise to the level of a sexual offenses in any degree).

*Nightingale,* 312 Md. at 708, 542 A.2d at 377 (emphasis added).

In the trial in *Dixon I,* the trial judge gave the following pertinent instructions to the jury:

---

Nightingale jury sent a question to the judge, asking whether "touching, in the wrong places, alone, constitute[s] child abuse as described in our instructions?" The judge's answer to that question was, in effect, "yes."

The instructions to the Myers jury also noted that sexual child abuse included a "sexual offense in any degree." And the Myers prosecutor argued to the jury that "child abuse, in this instance, consists of sexual abuse. You will have to decide today whether or not the State has proven that there was sexual abuse committed. By Mr. Myers on his own daughter...." The evidence of that abuse, as recounted by the prosecutor, consisted of the evidence of the various sexual offenses with which Myers was charged. And in his final remarks, the prosecutor addressed by name only the crime of child abuse.

*Nightingale,* 312 Md. at 707–08, 542 A.2d at 377.

■■■■■■

As I mentioned, the defendant is charged with several different charges. And you must consider each charge *separately* . . . .

Of course, if you find the defendant guilty of the first degree murder, you don't have to go on and decide whether or not he was guilty of second degree or manslaughter . . . . If you determine he was not guilty of first degree murder, then you have to consider whether or not he was guilty of second degree murder or manslaughter. If you decide he is not guilty of second degree murder, then you look at manslaughter . . . .

\* \* \*

The next count has to do with do you find the Defendant Guilty or Not Guilty of First Degree Assault. . . . Now, in order to convict the defendant of first degree assault, the State must prove that the defendant caused offensive physical contact or physical harm to the victim, that the contact was not consented to, of course, by the victim, or was not legally justified; that the defendant used a firearm to commit the assault *or* the defendant intended to cause serious physical injury in the commission of the assault. (Emphasis added).

Thus, the trial judge advised the jury that it could find Petitioner guilty of first degree assault under either modality, (a)(1) *or* (a)(2), of the first degree assault statute and informed the jury to consider each charge separately.[36] The same was

---

36. Before sentencing at the *Dixon I* trial, Petitioner's attorney argued:
 Your Honor, what we have here is that in the first degree assault, the instruction the Court gave to the jury, the Court instructed the jury on the various theories in which the first degree assault conviction can be attained, that is using the instructions, first degree assault could be the use of a firearm in the commission of a battery. Of course battery and assault under the facts of this particular case were interchangeable, and thus the Court instructed the jury using alternative C under Maryland Pattern Criminal Jury Instruction 4.01, that is the second degree assault.
 Using the language under alternative C for battery, of course, the aggravating factor for first degree assault being either the use of a

so in *Nightingale* where, as we noted, that the "judge instructed on the elements of all offenses submitted to the jury ... [and] included a direction to consider each charged offense separately." *Nightingale*, 312 Md. at 707, 542 A.2d at 376.

Upon returning its verdict, the jury did not identify verbally under which modality it had convicted Petitioner of first degree assault. The deputy clerk asked the jury: "Do you find the Defendant Not Guilty or Guilty of First Degree Assault ..."? To which the foreperson of the jury simply responded "Guilty." The verdict sheet is no more illuminating:

Do you find the Defendant Not Guilty or Guilty of First Degree Assault ... ?

——NOT GUILTY _X_ GUILTY

During his opening statement in the trial in *Dixon I*, the prosecutor did not place particular emphasis on the offense of assault or mention either modality of the assault statute. The State contended rather that the case was about guns; "[t]he problem of guns and the power that guns have when they are in the hands of young men who go out and use them." In Petitioner's trial attorney's opening statement, nothing was mentioned specifically regarding the assault charge. The State's closing argument may be understood to emphasize only modality (a)(2) of the first degree assault statute. The prosecutor stated:

Did he commit a first degree assault? That's only part of the murder. It's going to be part of the first degree assault. What did the Judge tell you that was? Did the

---

handgun or firearm or causing serious physical injury, and the verdict sheet did not differentiate under which theory the jury was able to find [Petitioner] guilty of the first degree assault, whether it found that the aggravating factor was the serious physical injury, elevating second degree assault to first degree assault, or whether it was the use of a firearm, because the verdict sheet that was used in this particular case did not differentiate, we are left with an unanswered ambiguity, and we believe that ambiguity should be resolved in [Petitioner's] favor, and it should be in favor of the serious physical injury as opposed to using the firearm.

defendant by using that *gun shoot, strike, in any other way harm [the victim] using a handgun?*

A first degree assault is different from second degree assault in that first degree assault requires that you use a handgun. If you shoot somebody and use a handgun to do it, it's a first degree assault. And there is no doubt there are bullets throughout his body. It's a first degree assault.

Petitioner's attorney, in his closing argument, did not mention the assault charge. Thus, it appears as if the jury was sent mixed messages in *Dixon I.* It is clear that the State was emphasizing the use of a handgun regarding the first degree assault, but the trial judge instructed regarding both modalities of first degree assault. The jury returned a general verdict. It is apparent then that we cannot determine under which modality the jury convicted Petitioner of first degree assault. We are left with the same ambiguity as was presented in *Nightingale.* In *Nightingale,* we concluded:

In these circumstances we resolve the ambiguity in favor of the defendants and set aside the judgments on the sexual offense counts. *See Frye,* 283 Md. at 723–25, 393 A.2d at 1379–80 (unclear basis for verdict of first degree murder). *Also see, Leary v. United States,* 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–46, 23 L.Ed.2d 57, 79 (1969) ("It has long been settled that when a case is submitted to the jury on alternative theories of unconstitutionality of any of the theories requires that the conviction be set aside."); and *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356, 1371 (1957) ("the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected").

*Nightingale,* 312 Md. at 709, 542 A.2d at 377.[37] As in *Nightingale,* we resolve the ambiguity here in favor of Petitioner and

---

**37.** In *Frye,* we concluded, in the companion case of *Jones,* that

determine the sentence illegal in *Dixon I* for purposes of determining the proper sentence in *Dixon II.* The sentence for the conviction for first degree assault in *Dixon II* should have been restricted to ten years. For future guidance, we stated in *Frye:*

> Where there is more than one ground for a verdict on a criminal charge, but where ramifications of a guilty verdict on that charge will be different depending upon the ground chosen by the jury, the obvious way to deal with the situation is, as indicated by the court below in *Frye,* to give the jury adequate advisory instructions.

*Frye,* 283 Md. at 723, 393 A.2d at 1379 (citing *United States v. Quicksey,* 525 F.2d 337 (4th Cir.1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *Brown v. United States,* 299 F.2d 438 (D.C.Cir.1962)).

The Court of Special Appeals's reported opinion in *Dixon II* mischaracterizes the holding in *Nightingale.* The intermediate appellate court stated:

> After examining the evidence, the jury instructions, the opening statements, and the closing arguments, it was clear that the convictions for child abuse, in both companion

---

that the jury might have based its murder verdicts on a finding of wilful, deliberate and premeditated homicide. It would have considered the underlying felony charges and the associated handgun charges, and guilty verdicts on those felony counts could properly have resulted in sentences. It was not in any manner the State's fault that such instructions were not given. Under these circumstances, we believe that the State may, if so inclined, elect to re-try Jones on the murder, underlying felony and associated handgun charges. In such event, the jury should be instructed in this opinion. But if, after a reasonable period of time, the State fails to elect a new trial in the *Jones* case, the judgments on the three underlying felony and related handgun counts should be vacated.

*Frye,* 283 Md. at 724–25, 393 A.2d at 1380. As for the *Frye* case, we concluded:

[T]he State may not have such an election ... because the defendant Frye, unlike Jones, did not take an appeal from the murder conviction. For the State to try him again for murder would violated the prohibition against double jeopardy.

*Id.* (citing *Benton v. Maryland,* 395 U.S. 784, 796–97, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Green v. United States,* 355 U.S. 184, 188–94, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

cases, were exclusively for the sexual variety of child abuse and had nothing to do with the physical injury variety of the crime:

> So far as child abuse in concerned, we can put aside any thought that these cases involve any aspect of child abuse based on physical harm or cruel physical treatment. At both Nightingale's and Myers's trials, the State's theory, as presented in opening statement, closing argument, and the court's instructions, was sexual child abuse.

*Nightingale v. State*, 312 Md. at 707, 542 A.2d 373,

> For the merger analysis that followed, the physical injury form of the multi-form crime of child abuse was factored out as if it had never existed. *Using the rule lenity to resolve certain further ambiguities,* The Court of Appeals concluded that the specific sexual offense conviction *did, indeed, merge into the conviction for the sexual variety of child abuse.*

*Dixon,* 133 Md.App. at 347, 755 A.2d at 572 (emphasis added). In *Nightingale,* we did not rely on the rule of lenity.[38] We determined, as stated *supra,* that

---

**38.** In *White v. State,* 318 Md. 740, 569 A.2d 1271 (1990), we explained that the rule of lenity is another standard, applied when offenses are separate under the required evidence test, for determining merger of offenses. *White,* 318 Md. at 744, 746, 569 A.2d at 1273–74. The rule "provides that doubt or ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transaction will be resolved against turning a single transaction into multiple offenses." *White,* 318 Md. at 744, 569 A.2d at 1273 (internal quotation marks omitted) (quoting *Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70, 78 (1978)). We further stated: "This policy of lenity means that the Court will not interpret a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *Id.* (internal quotation marks omitted) (alterations in original) (quoting *Simpson,* 435 U.S. at 15, 98 S.Ct. at 914, 55 L.Ed.2d at 78). As for the application of the rule of lenity, "it should be used like other principles of statutory construction as an aid in ascertaining legislative intent with respect to a statutory offense" and should be used with other considerations such as whether the offenses have historically merged and "the fairness of multiple punishments in a particular situation". *White,* 318 Md. at 745–46, 569 A.2d at 1273–74 (citations omitted).

[u]nder these circumstances, we believe that each jury *could have found* defendant before it guilty of child abuse based solely on evidence of a sexual offense in some degree. If that were done, then the sexual offense became, in effect, a lesser included offense of sexual child abuse, and under the authorities we have cited, the offenses are the same for double jeopardy purposes....

The problem, then, is that we cannot tell whether these general verdicts of guilty were based on the use of sexual offenses as lesser included offenses (or elements) of child abuse, or whether the child abuse verdicts were based on other reasons (*e.g.* some sort of sexual molestation which the juries thought did not rise to the level of a sexual offense in any degree).

*Nightingale*, 312 Md. at 708, 542 A.2d at 377. Furthermore, we did not rely on those cases invoking the rule of lenity, but rather employed the reasoning of *Frye* and *Newton*, neither of which applied the rule of lenity. *Nightingale*, 312 Md. at 704–09, 542 A.2d at 375–78. Lastly, we explicitly stated that we did not formulate our decision based on the rule of lenity:

Nightingale and Myers argue that for double jeopardy purposes, their convictions and sentences for child abuse and sexual offenses cannot stand because the crimes are the same under the required evidence test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as applied by us in cases such as *State v. Frye*, 283 Md. 709, 393 A.2d 1372 (1978), and *Thomas v. State*, 277

---

Although with merger of offenses under the required evidence test, "we are not concerned with penalties—the lesser included offense generally merges into and is subsumed by the greater offense regardless of penalties," *Spitzinger v. State*, 340 Md. 114, 125, 665 A.2d 685, 690 (1995), under the rule of lenity, there is a merger of penalties, not offenses, and "the lesser penalty generally merges into the greater penalty." *Id.* (citing *State v. Burroughs*, 333 Md. 614, 626, 636 A.2d 1009, 1015 (1994); *State v. Owens*, 320 Md. 682, 688, 579 A.2d 766, 768–69 (1990)). Therefore, the Court of Special Appeals, in its unreported opinion in *Dixon I*, under the rule of lenity, incorrectly merged first degree assault into attempted voluntary manslaughter as first degree assault carries the greater sentence. *See supra* p. 6.

Md. 257, 353 A.2d 240 (1976). In the alternative, petitioners urge us to invoke the "rule of lenity" we recently discussed in *Dillsworth v. State*, 308 Md. 354, 519 A.2d 1269 (1987). The State insists that Nightingale and Myers are not entitled to the benefit of either rule. *We need address only petitioner's first contention.*

*Nightingale*, 312 Md. at 702, 542 A.2d at 374 (emphasis added).

The Court of Special Appeals, in its reported opinion in *Dixon II*, after improperly characterizing *Nightingale*, applied the reasoning of *Newton v. State*, 280 Md. 260, 373 A.2d 262 and *State v. Frye*, 283 Md. 709, 393 A.2d 1372, to the Circuit Court's sentencing on remand to hold that first-degree assault was not a lesser included offense because the first degree assault conviction "was indisputably supported by both alternative theories of aggravation." [39] *Dixon*, 133 Md.App. at 349–54, 755 A.2d at 573–76. It is important to note that, under the circumstances of the present case, the instructions provided to the jury during the trial on remand and upon what the jury made its first degree assault conviction in the trial on remand are inconsequential to determining whether the sentence on remand is illegal under CJP § 12–702(b) or whether there was merger of the convictions for the purpose of the initial sentencing in *Dixon I.*

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE SENTENCES IMPOSED BY THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW SEN-

---

**39.** The Court of Special Appeals, employing *Newton, Frye,* and *Nightingale,* determined:

Unlike the situation in the first trial, discussed in *dicta* in our first opinion, there was no ambiguity on this occasion as to the basis for the jury's verdict of guilty on the charge of first degree assault. There was no vagueness calling for resolution under the rule of lenity. The hypothetical possibility discussed in the *dicta* never came to pass. *Dixon*, 133 Md.App. at 353, 755 A.2d at 575.

TENCING PROCEEDING NOT INCONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY, MARYLAND.